In re LOMBARDO FRUIT &
PRODUCE, Debtor.

GOLDMAN FRUIT AND PRODUCE
CO., a Missouri corporation,
Plaintiff,

v.

LOMBARDO FRUIT & PRODUCE COMPANY, a Missouri corporation, d/b/a Lombardo's Food Service, and Uni–Fin Corp., and Illinois corporation, and Davis Sosne, Trustee of Bankruptcy for Lombardo Fruit and Produce Company, Defendants.

Bankruptcy No. 89–01101–BSS.
Adv. No. 89–0117–BSS.

United States Bankruptcy Court,
E.D. Missouri, E.D.

Oct. 31, 1989.

D. Raymond Raney, Godfrey, Ill., for plaintiffs.

Jerome I. Kaskowitz, James D. Bass, St. Louis, Mo., Stephen A. Gorman, Jeffrey C. Blumenthal, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

On May 17, 1989, Plaintiff, Goldman Fruit and Produce Company (hereinafter "Goldman"), filed an Adversary Complaint, in which it seeks to preserve and enforce trust benefits as an unpaid seller of perishable agricultural commodities under the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499a et seq. Defendant, Uni–Fin Corporation (hereinafter "Uni–Fin"), holds a first, perfected security interest in all of the Debtor's accounts receivable and proceeds. Uni–Fin has filed a Motion for Summary Judgment, claiming that Goldman is not a short term creditor within the meaning of the PACA statute or its accompanying regulations.

### JURISDICTION

This Court has jurisdiction over the subject matter of the proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B).

### FACTS

From March, 1987 to February 10, 1989 Goldman sold $115,644.25 of produce to Lombardo for which it has not received

payment. Goldman does not dispute Uni-Fin's assertion that throughout this period Uni-Fin held a first, perfected security interest in all of Lombardo's accounts receivable and derivative proceeds or that Uni-Fin gave Lombardo substantial value for each account receivable it financed.

Goldman generally sold produce to Lombardo on a daily basis. Goldman's President, James Randazzo, discussed these produce transactions with Lombardo's produce buyer on a daily basis. The discussions mainly consisted of Mr. Randazzo giving price and quality quotations. He would then take the order, prepare an invoice, and see that it was processed. After processing the order, one of Goldman's loaders would deliver the produce to Lombardo's premises and obtain the signature of Lombardo's buyer on the invoice. The signed invoices, which were returned to Goldman, never set forth the time period in which Lombardo was to pay for the produce. Although invoices themselves lacked payment terms, Goldman would later send Lombardo weekly statements of all unpaid invoices. Beginning on September 2, 1988, these statements contained the following legend at the bottom of the page:

NOTICE OF INTENT TO FILE P.A.C.A TRUST–Terms net weekly. These invoices will be considered delinquent after 30 days of invoicing. Goldman Fruit & Produce Company intends to file P.A.C.A. Trust notices to preserve trust benefits.

This legend remained on all the statements issued after September 2, 1988 for the remainder of the parties' business relationship.

Mr. Randazzo stated in his Affidavit that he requested payment for produce "thirty (30) days net of delivery". Randazzo Affidavit, para. 3. He based this contention on a letter he sent to Lombardo which stated that terms of sale were "Net 30 days". Unfortunately, Mr. Randazzo failed to date the letter, and testified at his deposition that he could not recall the day, month or year that he signed and mailed the letter. Randazzo Deposition at 41–43, 48–49. Mr. Randazzo also testified that nothing would help refresh his memory regarding the date or year of the letter. *Id.* at 48–49. While Mr. Randazzo has claimed that payment terms between Goldman and Lombardo were thirty days after delivery, Lombardo never paid Goldman within this thirty day period. The earliest that Lombardo paid Goldman was fifty days after delivery.

During their weekly telephone conversations, Mr. Randazzo and Gary Lombardo, Lombardo's President, would discuss payment of outstanding invoices. Mr. Randazzo would ask Mr. Lombardo whether a check was to be picked up, as Goldman's practice was to pick up checks on a weekly basis. On numerous occasions the checks with which Lombardo paid Goldman were returned for insufficient funds. Despite his familiarity with Lombardo's history of writing bad checks, Mr. Randazzo continued to allow Goldman to sell produce to Lombardo.

It was not until February 13, 1989, three days after learning that Lombardo intended to cease business operations, that Goldman filed a notice of intent to preserve its PACA trust benefits with the United States Department of Agriculture (USDA). The first notice concerned outstanding invoices from December 10, 1988 to February 10, 1989. On February 24, 1989, Goldman filed its second PACA trust preservation notice with the USDA, concerning nine checks which Goldman had received from Lombardo for produce sold between November 14, 1988 and December 9, 1988. Of the nine checks, each dated sixty days or more after the given produce sale, three were replacement checks for earlier checks which Goldman received from Lombardo. Mr. Randazzo testified that in these three instances Goldman had chosen to accept the replacement checks rather than filing a notice with the USDA after the initial check was returned for insufficient funds.

Uni-Fin now contends that as a matter of law Goldman is not a short term creditor within the meaning of the Perishable Agriculture Commodities Act (PACA), 7 U.S.C. § 499a. Therefore, Goldman may not seek statutory protection of its trust benefits and the Motion for Summary Judgment

must be granted. Goldman argues that sufficient factual disputes exist to preclude the Court from granting Uni–Fin's Motion for Summary Judgment. This Court agrees with Uni–Fin.

### DISCUSSION

### I. APPROPRIATENESS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Interpreting the above language, the United States Supreme Court held that Rule 56(c) mandates the entry of summary judgment where, after adequate time for discovery and upon motion, the movant demonstrates the undisputed facts through the record, and the non-moving party fails to establish an essential element of their case on which they bear the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court went on to state that failure to prove an essential element of the case necessarily renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

The Eighth Circuit has commented upon the Supreme Court's *Celotex* holding in numerous decisions. In *City of Mt. Pleasant, Iowa v. Associated Elec. Coop.*, 838 F.2d 268, 273–74 (8th Cir.1988), the court stated:

> In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that the burden on the party moving for summary judgment is only to demonstrate, *i.e.,* "[to] point[ ] out to the District Court," *id.* 106 S.Ct. at 2554, that the record does not disclose a genuine dispute on a mate-

rial fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the respondent fails to carry that burden, summary judgment should be granted.

*See also Osborn v. E.F. Hutton & Co., Inc.,* 853 F.2d 616, 618 (8th Cir.1988); *Hegg v. United States,* 817 F.2d 1328, 1331 (8th Cir.1987). Thus, under *Celotex* and *City of Mt. Pleasant,* a court must grant summary judgment when the non-movant fails to prove a material element on which he carries the burden.

*Celotex* and *City of Mt. Pleasant* make it clear that this case is appropriate for summary judgment. In their pleadings, depositions, affidavits and memoranda, Uni–Fin has sustained its burden of showing no factual dispute, and Goldman has provided the Court with no evidence to suggest that any material facts to this case are in controversy. Goldman alleges that the parties disagree as to whether Lombardo would pay Goldman within thirty days of the produce delivery. Goldman supports its position with Mr. Randazzo's letter to Lombardo. The letter, however, is undated, and Mr. Randazzo has testified that nothing will help to refresh his memory regarding when he wrote or mailed it. Randazzo Deposition at 48–49. Mr. Randazzo's admission by itself indicates to the Court that further factual inquiry at the trial level would serve no purpose. In *Celotex,* Justice Rehnquist wrote:

> Rule 56(e)[1] ... requires the non-moving party to go beyond the pleadings and

---

1. Rule 56(e), a companion to Rule 56(c), states, in pertinent part:

   When a motion for summary judgment is made and supported as provided in this rule,

an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this

by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Id.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thus far Goldman has failed to persuade the Court that this is anything more than a legal controversy concerning Goldman's statutory compliance.

■ In addition, the date of the letter takes on legal rather than factual significance. In order to comply with the PACA statute and preserve its trust benefits, Goldman must prove that it entered into its payment agreement with Lombardo prior to the transaction itself.[2] Simply stated, the issue in this case is whether Goldman has complied with the prerequisites necessary to preserve its PACA trust benefits. This Court finds this issue to be purely legal in nature, and therefore entirely appropriate for summary judgment. Put into the terms of the Supreme Court's *Celotex* decision, the issue of whether the parties entered into an agreement prior to the given transaction is a material issue to this cause of action which Goldman must prove in order to succeed on the merits of its case.

## II.  COMPLIANCE WITH THE PACA STATUTE

■ Subsections (c)(2) and (c)(3) of 7 U.S.C. § 499e provide, in pertinent part:

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. The provisions of this subsection shall not apply to transactions between a cooperative association (as defined in section 1141j(a) of Title 12), and its members.

(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accounting, and other documents relating to the transaction.

Thus, under § 499e(c)(3) a produce seller has a given time in which he is to receive payment from the buyer, determined either by statute or the parties' agreement. If the seller fails to receive such payment in that time period, he must notify the buyer of his intent to preserve PACA trust benefits and file such notice with the Secretary of Agriculture within thirty days after the time 1) set forth by the Secretary, or 2) agreed upon in writing by the parties, or 3) the seller discovers that his promptly

rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary

judgment, if appropriate, shall be entered against the adverse party.

**2.**  7 U.S.C. § 499e(c)(3)(ii).

presented check has been dishonored. The remainder of the discussion will focus on how each portion of § 499e(c)(3) impacts upon Goldman's cause of action.

## A. § 499e(c)(3)(i)—THE TIME PRESCRIBED BY THE SECRETARY

■ Section 499e(c)(3)(i) states that a seller must notify the buyer of his intent to preserve PACA trust benefits within thirty days after the payment period prescribed by the Secretary of Agriculture in the accompanying federal regulations. Turning to the applicable regulation, 7 CFR § 46.46(f)(1), governing "Prompt payment and eligibility for trust benefits", states that "[t]he times for prompt payment are set out in § 46.2(z) and (aa)." Section 46.-2(aa)(5) defines "full payment promptly", for purposes of this case, as "Payment for produce purchased by a buyer within 10 days after the day on which the produce is accepted." Thus, in order to comply with 7 U.S.C. § 499e(c)(3)(i), Lombardo must have tendered payment to Goldman within ten days of receiving its given produce shipment.

Compliance with this segment of the statute, however, is not an issue in this case. Nowhere in the record does Goldman contend that the payment terms between it and Lombardo were ten days, as prescribed by the Secretary of Agriculture. Instead, Goldman maintains that the parties agreed to a payment arrangement of Net 30 days. Thus, Goldman effectively has waived its § 499e(c)(3)(i) defense and this Court need consider the issue no further.

## B. § 499e(c)(3)(ii)—THE PARTIES' AGREEMENT

■ This segment of the statute requires an unpaid seller to notify the produce buyer of the seller's intent to preserve its PACA trust benefits within thirty days after the payment date which "the parties have expressly agreed to in writing *before entering into the transaction.*" 7 U.S.C. § 499e(c)(3)(ii) (emphasis added). The applicable regulation further states that the maximum payment period on which a buyer and seller may agree is "30 days after the buyer's receipt and acceptance of the com-

modity." 7 CFR 46.46(f)(2). Further explaining this Regulation, the Federal Register states:

Congress directed the Secretary [of Agriculture] to establish the maximum time by which the parties to a transaction can agree payment must be made and still qualify for coverage under the trust. An agreement for payment after such time will not qualify for trust coverage.

Current payment practices, as reflected by administrative experience and industry sources, indicate that contracts calling for payment within 30 days from receipt and acceptance of the goods should qualify for trust coverage, and that contracts that call for later payment should not qualify for trust coverage. Therefore, as set forth in § 46.46(f)(2), if an agreement calls for payment 31 days or more after receipt and acceptance of the goods, the trust provisions will not apply to that transaction.

49 Fed.Reg. 45735, 45738 (1984). The absoluteness of the thirty day limitation on terms of payment agreements is further evidenced in the following quote from the statute's legislative history:

Under the bill [establishing the requirements for a PACA trust], the Secretary is required to establish, through rulemaking, the time by which a transaction must be made, to qualify it for coverage under the trust. An agreement for payment after such time will not be eligible to receive the benefits of the trust.

H.R. 543, 93rd Cong., 2d Sess. 7, *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 405, 410.

Thus, both the statute's regulations and legislative history strongly indicate that the parties may extend their terms of payment through prior written agreement no more than thirty days from the date of produce delivery. Subsequent decisions have recognized the strictness of this requirement. *In re D.K.M.B.*, 95 B.R. 774, 779 (Bankr.D.Colo.1989), the court stated that:

[T]he Draconian impact of the 1984 PACA amendments [providing for the PACA Trust] upon the creditors of this,

or any other, debtor, militates strongly against a determination that anything less than strict compliance should be acceptable to preserve the PACA trust benefits.

Given both the statutory and legal precedent, this Court concludes that in order to preserve its PACA trust benefits under 7 U.S.C. § 499e(c)(3)(ii), Goldman must prove that it strictly complied with the necessary statutory requirements.

### 1. MR. RANDAZZO'S LETTER

■ Goldman claims that it agreed with Lombardo to a payment period of "Net 30 days". As evidence of this agreement, Goldman offers a letter sent by Mr. Randazzo to Lombardo, in which he extends the terms of payment to thirty days. The letter, however, was never dated and Mr. Randazzo has testified that nothing will help refresh his memory as to the day, month, and year in which he sent it.

The Court is left with a document that is literally timeless. Mr. Randazzo's testimony has made it quite clear that nothing can be done to prove when he sent the letter. This fact proves fatal to this portion of Goldman's case. Without any proof that Goldman and Lombardo, through the proffered letter, agreed to payment terms of thirty days before the transaction, this Court cannot rule that Goldman has strictly complied with the prerequisites necessary to preserve its trust benefits under 7 U.S.C. § 499e(c)(3)(ii).

### 2. GOLDMAN'S INVOICE STATEMENT LEGEND

■ Also related to this portion of the statute is the legend, seeking to preserve PACA trust benefits, which Goldman placed on the bottom of its unpaid invoice statements. Aside from the apparent contradiction of the terms "net weekly" and "after 30 days of invoicing" in the first and second sentences, this Court also questions the enforceability of such a clause.

Section 499e(c)(3)(ii) allows parties to agree to the time of payment for up to thirty days if they express the terms in writing prior to the transaction. Evidently Goldman believes that the legend appearing at the bottom of the statement of unpaid invoices is sufficient to comply with this portion of the statute. However, Goldman's intention ignores a key requirement of this statutory segment—mutuality. In order to comply with subsection (c)(3)(ii), the parties must have *expressly agreed* to the terms of payment in writing. Such mutuality is clearly absent in the instant case. Rather than a joint modification of the payment period, Goldman seeks to unilaterally impose the terms upon Lombardo. Such an imposition of payment terms clearly flies in the face of the statute's plain language and cannot be upheld. Thus, this Court holds that a seller's unilateral placement of payment terms on certain of its business documents in an effort to preserve PACA benefits under 7 U.S.C. § 499e(c)(3)(ii) is unenforceable.[3]

### C. § 499e(c)(3)(iii)—DISHONORED CHECKS

■ Subsection (c)(3)(iii) of the statute allows an unpaid produce seller to file its PACA notice within thirty days after it receives notice that its promptly presented payment instrument has been dishonored. The parties in this case differ as to the interpretation of the above rule. Goldman contends that an unpaid seller has thirty days from notification of the check's dishonorment, regardless of when the check is actually tendered to the seller. Uni–Fin asserts that in order to seek the protection of subsection (c)(3)(iii), a seller must present the check either within the time prescribed by the Secretary of Agriculture or within the time agreed upon by the parties, depending upon which period is applicable. In essence, Uni–Fin claims that part (iii) is dependent upon the time period set forth in either part (i) or (ii). This Court agrees with Uni–Fin.

The purpose of part (iii) is to protect produce sellers who receive a check and then discover that the check has been sub-

---

**3.** The Court takes notice of the fact that while Goldman's legend appears on its statements of unpaid invoices, it is not present on either the invoices themselves or any other Goldman documents relating to the delivery or financial transactions between the parties.

sequently dishonored. In order to seek such protection, however, part (iii) requires that the check must be "promptly presented". This indicates Congress' desire to have parties' produce transactions conducted in a predictable, timely fashion. This Congressional desire for timeliness also incorporates itself into another facet of the parties' produce transaction—the time in which the buyer must tender a check to the unpaid seller.

Goldman has interpreted § 499e(c)(3)(iii) to mean that even though a party does not file notice or receive payment within the time period prescribed by parts (i) and (ii), it nevertheless is granted thirty days from the date it learns of the check's dishonorment. Thus, Goldman essentially argues that part (iii) is wholly independent of parts (i) and (ii). This Court believes that such a statutory interpretation carries with it two inherent flaws. First, the Goldman reading effectively has rendered meaningless any time period for payment mandated either by the Secretary's regulations or the parties' agreement. Instead of requiring payment in the given period, a seller could receive the check at any time without losing its trust benefits because the only date of consequence is when the seller became aware of the check's dishonorment. Thus, the parties could ignore the prescribed time period in § 499e(c)(3)(i) or (ii) and suffer no loss of trust benefits. The Court believes that such a result contravenes the purpose of the statute. Second, Goldman's interpretation presents a grave danger of fraud upon secured creditors. Where once secured creditors could rely on a regular buyer-seller payment schedule, now the creditor would be at the mercy of the parties' whims. Thus, such an interpretation distinctly works to the disadvantage of any secured creditor. Each of these flaws makes it apparent that the Goldman interpretation is incorrect. Accordingly, this Court holds that in order to preserve its

PACA trust benefits under 7 U.S.C. § 499e(c)(3)(iii), a produce buyer must tender a check to an unpaid seller within either the time period prescribed by the Secretary of Agriculture or pursuant to the parties' agreement, whichever is applicable to the individual case.

Turning to the instant case, Goldman filed two notices of intent to preserve trust benefits. The second notice was based on nine checks which Goldman received from Lombardo, three of which were replacements for earlier checks. As shown in Exhibit A, all checks were dated 60 days or more from the date of the produce sale to which they relate. In addition, Lombardo had post-dated some of these checks, with Goldman's permission, in an effort to accommodate Lombardo's financial difficulties.[4]

Goldman contends that they agreed to a payment period of "Net 30 days". However, even assuming *arguendo* that the parties had agreed to a thirty day payment period, it is apparent that Goldman's receipt of Lombardo's checks over sixty days from the produce transaction to which each relates does not comply with the parties purported agreement. Thus, because Goldman did not receive payment from Lombardo within the net thirty day payment period supposedly agreed upon by the parties, this Court must rule that Goldman, in failing to file timely its notice to preserve PACA benefits, did not strictly comply with § 499e(c)(3)(iii).[5] As the Supreme Court stated in *Celotex:*

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action". Fed.Rule Civ.Proc. 1.

---

**4.** Regarding the post-dating of checks, the Court believes that the relevant date for purposes of calculating the payment period is that written on the check rather than the date of the seller's receipt of the check.

**5.** Because Goldman received all of the original checks later than the thirty days from delivery of its goods (and therefore outside of the alleged 30 day terms of payment), this Court declines to rule on the issue of whether a party may renew or extend its PACA filing period by receiving replacement checks.

477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986).

The facts presented demonstrate that summary judgment is the most appropriate method of disposition for this case. Accordingly, it is

ORDERED that Goldman Fruit and Produce Company is not entitled to preservation of its trust benefits under the Perishable Agricultural Commodities Act and Uni–Fin's Motion For Summary Judgment is GRANTED.

### EXHIBIT A

| Check # | Date of Delivery of Goods and Accompanying Invoice | Date of Check Delivery | Days Between Invoice and Check Delivery |
|---------|------------|------------|------------|
| 13681 [1] | 11/18/88 | 1/17/89 | 60 |
| 13799 [2] | 11/25/88 | 1/24/89 | 60 |
| 13800 [3] | 11/25/88 | 1/27/89 | 63 |
| 13951 | 12/02/88 | 1/31/89 | 60 |
| 13952 | 12/02/88 | 2/03/89 | 63 |
| 14047 | 12/09/88 | 2/08/89 | 61 |
| 14048 | 12/09/88 | 2/08/89 | 61 |
| 14049 | 12/09/88 | 2/09/89 | 62 |
| 14050 | 12/09/88 | 2/10/89 | 63 |

1. Check # 13681 was replaced by check # 13930, dated 1/26/89, which was later replaced by check # 14083.
2. Check # 13799 subsequently was replaced by check # 14011, dated 2/1/89.
3. Check # 13800 was replaced by check # 14082, dated 2/6/89.