12 F.3d 110
 In re LOMBARDO FRUIT AND PRODUCE COMPANY, Debtor.
GOLDMAN FRUIT AND PRODUCE COMPANY, Plaintiff-Appellees,
v.
LOMBARDO FRUIT AND PRODUCE COMPANY, doing business as
Lombardo's Food Service; Uni-Fin Corporation;
David Sosne, Trustee of Bankruptcy for
Lombardo Fruit and Produce,
Defendants-Appellants.
 No. 93-1683.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 15, 1993.
Decided Dec. 15, 1993.
 
 Donald Raney, Edwardsville, IL, argued, for defendants-appellants.
 Jeffrey Blumenthal, Chicago, IL, argued, for plaintiff-appellee.
 Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Goldman Fruit and Produce Company ("Goldman") appeals the district court's[1] affirmance of the bankruptcy court's[2] grant of summary judgment denying Goldman's assertion of trust benefits over the proceeds from the sale of certain agricultural products. We affirm.
 
 I. BACKGROUND
 
 2
 From March 1987 to February 1989, Goldman supplied fresh agricultural produce to Lombardo Fruit and Produce Company ("Lombardo") on a daily basis. When orders were taken, Goldman prepared an invoice that was signed by Lombardo when the produce was received. The invoices, which thereafter were maintained in Goldman's files, did not set forth the terms of payment for the produce. However, Goldman sent Lombardo weekly statements detailing all unpaid invoices. Commencing on September 2, 1988, the invoices bore a legend stating "Notice of Intent to File PACA Trust-Terms net weekly" and that all invoices would "be considered delinquent after 30 days of invoicing." In re Lombardo Fruit & Produce, 106 B.R. 593, 596 (Bankr.E.D.Mo.1989). This legend appeared on all subsequent invoices sent to Lombardo.
 
 
 3
 The invoices were not timely paid and, as of February 10, 1989, Lombardo owed Goldman over $115,000 for produce. On February 13, Goldman filed notice of its intention to assert trust protection for this sum pursuant to the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. Sec. 499a et seq. (1988). On February 24, Goldman sought trust protection with regard to nine checks Lombardo had tendered after the invoices were due, all of which were returned for insufficient funds.[3]
 
 
 4
 Lombardo filed for bankruptcy, and Goldman instituted an adversary complaint in the bankruptcy court, seeking to preserve and enforce its trust benefits. Uni-Fin, as holder of a first, perfected security interest in Lombardo's accounts receivable, opposed the action. The bankruptcy court granted Uni-Fin's motion for summary judgment, and the district court affirmed this decision. Goldman has appealed.
 
 II. DISCUSSION
 
 5
 PACA was designed to protect small farmers and growers from " 'the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities.' " Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 780 (8th Cir.1991) (quoting Chidsey v. Guerin, 443 F.2d 584, 587 (6th Cir.1971)). In 1984, Congress amended PACA because sellers of fresh produce were unsecured creditors and thus had no protection in light of the produce buyers' practice of granting lending institutions security interests in their accounts receivable. H.R.Rep. No. 543, 98th Cong., 2d Sess. 3 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 405, 407. Congress declared this practice to be a burden on interstate commerce, 7 U.S.C. Sec. 499e(c)(1) (1988), and decreed that sellers of perishable agricultural commodities were protected by a trust "until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers [or] sellers...." Id. Sec. 499e(c)(2). The protection extends only to "any receivables or proceeds from the sale of such commodities and food or products," id.; 7 C.F.R. Sec. 46.46(c) (describing trust assets), and proceeds from other sources are not within the trust's rubric. See Six L's Packing Co. v. West Des Moines State Bank, 967 F.2d 256, 258 (8th Cir.1992) (holding that PACA debtor may prove that certain funds are not proceeds from produce sales and hence not part of trust assets).
 
 
 6
 PACA's trust provision has the precise effect Congress intended; namely, in the event the seller does not receive payment, the seller is elevated to a priority position above that of all the buyer's secured creditors. The trust simply requires the produce buyer to hold the proceeds from its sales of produce and use them to pay suppliers before using those funds to pay its secured creditors. However, the unpaid supplier or seller loses the benefits of the trust protection unless it "has given written notice of intent to preserve the benefits of the trust to the [buyer] and has filed such notice with the Secretary [of Agriculture] within thirty calendar days" of three specified events. 7 U.S.C. Sec. 499e(c)(3). Those events are:
 
 
 7
 (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored.
 
 
 8
 Id. The Secretary's regulations require payment be made within ten days after the produce is accepted, 7 C.F.R. Sec. 46.2(aa)(5), but permit the parties to agree to a longer term provided that term is no longer than thirty days. Id. Sec. 46.46(f)(2).
 
 
 9
 The bankruptcy court granted Uni-Fin's motion for summary judgment, holding that there was no evidence of a prior written agreement extending the time for payment as required by (ii), that by trying to prove the existence of a valid written agreement Goldman waived any reliance on (i), and that trust protection did not extend to the checks because they were not delivered to Goldman within the time required for payment. Keeping in mind that we review the entry of summary judgment de novo, we examine each of these holdings.
 
 A. The Written Agreement
 
 10
 Goldman argues there was evidence of an agreement sufficient to withstand Uni-Fin's summary judgment motion; this evidence consisted of an undated letter Goldman sent to Lombardo that extended the payment terms to thirty days, the testimony of Goldman's president verifying that the payment terms were thirty days, and the purchase orders that stated payment was due within thirty days. For the agreement to be valid for PACA purposes, it must be "expressly agreed to in writing before entering into" the underlying transaction for produce. 7 U.S.C. Sec. 499e(c)(3)(ii) (emphasis added). There is no evidence that the agreement was reached before any of the individual produce sales. At his deposition, Goldman's president testified that he signed the letter and that it was mailed to Lombardo, but he could not recall when he signed the letter, when the letter was mailed, or when Lombardo's president signed the letter. He further testified that nothing could cause him to recall when these events took place. Though he did testify about the verbal agreements and customs between the parties, this testimony cannot substitute for the writing required by PACA. Finally, the invoices cannot satisfy the statute's requirement of a pre-existing agreement because they were delivered after, not before, the purchase of produce.[4] Faced with a record devoid of any evidence tending to prove the existence of a pre-existing written agreement, the bankruptcy court properly held that Sec. 499e(c)(3)(ii) barred any reliance on an agreement to extend the payment terms beyond those prescribed by the Secretary.
 
 B. The Secretary's Regulations
 
 11
 Goldman alternatively argues that it filed its notice within thirty days of the expiration of the ten day payment period established by the Secretary. Consequently, it is entitled to trust protection for the invoices in this category. We disagree.
 
 
 12
 The evidence in the record clearly demonstrates that the parties had an agreement to extend the payment terms beyond the ten days described in the regulation. Though this agreement is insufficient to preserve Goldman's trust protection, it is a valid contract between the parties. A predicate to the trust protection is the requirement that payment is delinquent; having agreed to extend the payment period beyond ten days, it would be incongruous to permit Goldman to now claim that no agreement existed and that payment was therefore due within ten days. See In re San Joaquin Food Serv., Inc., 958 F.2d 938, 941 n. 2 (9th Cir.1992).
 
 C. The Dishonored Checks
 
 13
 Goldman insists that, because it filed its notice within thirty days of learning the checks had been dishonored, the requirements of Sec. 499e(c)(3)(iii) have been met. However, we believe this interpretation of the statute leads to absurd and unintended results and therefore agree with the district court that the protections for dishonored checks exist only if the check was tendered to the seller before the account became delinquent. If Goldman's interpretation were adopted, a seller would be entitled to trust protection whenever a delinquent check was delivered and dishonored, regardless of how much time had passed since payment was due. This conflicts with Congress' desire to deny trust protection when a "credit transaction ... extends beyond a reasonable period." H.R.Rep. No. 543, 98th Cong., 2d Sess. 7 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 405, 410. Goldman's interpretation also thwarts Congress' observation that, under PACA, lending institutions will be able to know and consider the implications of the PACA trust in conducting its transactions. Id. at 4, 1984 U.S.Code Cong. & Admin.News at 407. Finally, Goldman's interpretation treats a seller who receives a dishonored check more advantageously than a seller who receives no payment whatsoever by granting the former a trust, even though it never received payment within the time prescribed by PACA. This contradicts the PACA's declaration that the tendering of a check that is dishonored is the same as nonpayment. 7 U.S.C. Sec. 499e(c)(2).
 
 
 14
 We also reject Goldman's argument that Sec. 499e(c)(3)(iii) will be meaningless if we do not interpret it in the manner it suggests. The provision will apply if the seller receives a check before the account becomes delinquent, but receives notice that the check has been dishonored after the date payment was due. In that case, the seller would have thirty days from the date he learns the check has been dishonored to file the notice necessary to preserve the trust, which period would be longer than thirty days after payment was due.
 
 III. CONCLUSION
 
 15
 We conclude there was no material fact demonstrating the existence of a written agreement prior to any of the transactions in question. We further conclude there is no material fact demonstrating Goldman's entitlement to PACA trust protection. Accordingly, we affirm the district court.
 
 
 
 [1]
 The Honorable George F. Gunn, Jr., District Judge for the Eastern District of Missouri. Judge Gunn's opinion is reported as In re Lombardo Fruit & Produce Co., 150 B.R. 941 (E.D.Mo.1993)
 
 
 [2]
 The Honorable Barry S. Schermer, Bankruptcy Judge for the Eastern District of Missouri. Judge Schermer's opinion is reported as In re Lombardo Fruit & Produce, 106 B.R. 593 (Bankr.E.D.Mo.1989)
 
 
 [3]
 Three of these checks were actually replacements for other checks that had been accepted by Goldman after payment was due but were dishonored by the bank
 
 
 [4]
 Consequently, we need not address Uni-Fin's alternative argument that the invoices failed to contain the information necessary to comply with PACA