In re **ANNDE FOODS, INC.,** Debtor.

**WILSON MUSHROOM COMPANY, Plaintiff,**

v.

**ANNDE FOODS, INC. and Cole Taylor Bank/Main, Defendant.**

**Bankruptcy Nos. 89 A 243, 89 B 2274.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 27, 1989.

LeRoy W. Gudgeon, Northfield, Ill., for
Wilson Mushroom Co., plaintiff.

Donald E. Geiger, Waukegan, Ill., for
Annde Foods, Inc., defendant.

Dennis E. Quaid, and Michael L. Stone,
Fagel, Haber & Maragos, Chicago, Ill., for
Cole Taylor Bank/Main, defendant.

## MEMORANDUM OPINION AND ORDER

DAVID H. COAR, Bankruptcy Judge.

This matter is before the Court on the Plaintiff's, Wilson Mushroom Company [Wilson], complaint to determine the validity, priority and extent of liens and motion for the segregation of the Debtors' assets pursuant to the Perishable Agricultural Commodities Act [P.A.C.A.], 7 U.S.C. § 499a *et seq.*, and the Court, having considered the record and pleadings on file in this case, having considered the memoranda of law submitted by the parties in support of their respective positions, and being fully advised in the premises, now enters its ruling;

This is a core proceeding over which the Court has jurisdiction, pursuant to Title 28 U.S.C. § 157(b)(2)(A) and (K). For the reasons set forth below, Wilson's motion for segregation of assets is granted and the ruling as to the complaint to determine the validity, extent and priority of lien is continued. The following constitutes the Court's findings of fact and conclusions of law, pursuant to Bankruptcy Rule 7052.

## BACKGROUND.

On February 9, 1989, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. The Debtor remained in possession of its assets and continued to operate its business as debtor-in-possession.

In March 1989, Wilson filed its complaint and motion alleging that it is entitled to the sum of $39,428.80, plus interest, costs and attorneys' fees from the assets of the Debtor pursuant to P.A.C.A., 7 U.S.C. § 499e. The Debtor denies the essential allegations of the motion and complaint, claiming, among other things, that Wilson was paid for the invoices in question and that Wilson has failed to comply with the requirements for establishing a trust under P.A.C.A. The Debtor also argues that mushrooms are

not covered by P.A.C.A. At the conclusion of the hearing held on the complaint and motion, the Court informed the parties that it would find and conclude that mushrooms fall within the meaning of perishable agricultural commodities.

Cole Taylor Bank has joined with the Debtor in responding to Wilson's complaint and motion because of a loan and security agreements that it has with the Debtor.

Prior to the filing of the Chapter 11 case, the Debtor and Cole Taylor were engaged in a financing relationship whereby Cole Taylor made advances to the Debtor under a revolving line of credit which was not to exceed $300,000. These advances and credits are evidenced in a promissory note dated April 29, 1988. As security for payment, the Debtor executed a loan and security agreement granting Cole Taylor a security interest in all of its existing accounts and subsequently acquired accounts, inventory, equipment, furniture and other property. Cole Taylor also holds certain guarantees and collateral securing those guarantees. A balance of approximately $260,000 is due and owing to Cole Taylor. Cole Taylor has perfected its security interest by filing financing statements with the Secretary of State of Illinois. In March 1989, the Court entered an order authorizing the Debtor to use Cole Taylor's cash collateral.

As a result of the Debtor's financing arrangements with Cole Taylor and the instant matters, Cole Taylor and Wilson have competing interests in certain of the Debtor's assets, assuming that Wilson is entitled to the benefits of a trust. In a separate proceeding, Cole Taylor seeks relief from the automatic stay, having withdrawn its consent to the use of its cash collateral.

On about July 20, 1989, this case was converted to a case under Chapter 7. Shortly thereafter, the Trustee abandoned the estate's interest in the assets subject to these proceedings.

## FINDINGS OF FACT.

The Debtor, Annde Foods, Inc., was formerly known as Annde Food Products, Inc. In October 1987, Robert Fronberry, the current owner, purchased the business from Ray McMullin and Ron Krueger. Annde Food Products was dissolved some time around March of 1988, and reincorporated as Annde Foods, Inc. The Debtor also purchased a produce business, Mushroom Sales, and assumed its debt to Wilson, a purveyor of mushrooms, of approximately $56,000. The record does not reveal just when the Debtor purchased Mushroom Sales.

The Debtor and Wilson orally agreed that Wilson would make deliveries to the Debtor so long as the total outstanding balance did not exceed a certain amount. Wilson also required that the Debtor make payments prior to new shipments.

It is undisputed that payments were to be made prior to new shipments, but the parties vigorously dispute whether the preshipment payments were to be applied to new invoices or the assumed debt. The testimony was conflicting as to what, if anything, the parties agreed upon as to how payments would be applied. The copies of invoices and other exhibits prove that orders were placed and that payments were made prior to those orders. The invoices indicate that the terms were "net 10 days." Most, if not all, of the payments were for amounts different from the amounts due on the invoices. But the parties offer conflicting explanations as to what all of this means.

Although the parties agree that payments were to be made prior to new shipments, there is no evidence before the Court that would support a finding that the parties actually agreed upon application of the payments. The Debtor did not direct Wilson to apply the payments in any particular manner, and Wilson did not inform the Debtor that it was applying the payments to the oldest invoices. The most telling fact is that Wilson began to protect itself against non-payment on the invoices in question by sending letters to the Department of Agriculture. This convinces the Court that at least as for as Wilson was concerned the payments made after November 1988 were on account of the assumed debt. Wilson expected to be paid

for current invoices shortly after deliveries were made. When those payments were not forthcoming Wilson sought the protection provided by P.A.C.A.

Therefore, the Court finds that the parties only agreed that the Debtor would make payments prior to shipments and that Wilson would make deliveries so long as the total outstanding debt did not exceed a certain amount; that is to say that any new order could not increase the total outstanding debt. There was no agreement as to how the payments would be applied. The Court also finds that there was no agreement as to when the current invoices would be paid and that Wilson reasonably expected to be paid within ten days after delivery.

As a means to insure payment on the invoices in question, Wilson sent letters to a representative of the Department of Agriculture which listed, among other things, the amounts due and dates of the invoices. Attached to the letters were copies of invoices dated from November 1988 to January 14, 1989, which indicate that the terms for payment was "net ten days." Wilson also sent copies of these letters and attachments to the Debtor.

The record does not reveal just what assets the Debtor has at this point, and therefore the Court is unable to determine the validity, extent and priority of liens.

### DISCUSSION.

The issues before the Court are 1) whether P.A.C.A. applies to the invoices in question and, if so, whether Wilson complied with the requirements of that provision and is entitled to the beneficial interest of a trust; and 2) assuming that Wilson is entitled to the benefits of a trust, what is the extent and priority of its lien.

Application of Payments.

■ As a preliminary matter, the parties dispute whether Wilson was in fact paid for the invoices in question and whether Wilson properly applied the payments to the oldest invoices. The general rule applicable to payment on accounts is that when a creditor holds various accounts of a debtor, in absence of direction from the debtor, the creditor may apply payments to the best advantage of the creditor. *Herget National Bank v. US Life Title Insurance Co.*, 809 F.2d 413 (7th Cir.1987). And where a creditor holds both secured and unsecured debts, the creditor may apply payments made to the unsecured debts because it would be contrary to public policy to require a creditor to apply unspecified payments to a secured debt and lose its lien. *Skach v. Gee*, 137 Ill.App.3d 216, 91 Ill.Dec. 882, 484 N.E.2d 441 (1985). Under Illinois law, this general rule will not be applied when it appears from the circumstances surrounding the case that application of the rule would work an injustice. *Herget National Bank*, 809 F.2d at 418 (citation omitted).

■ The Debtor contests Wilson's application of payments to the oldest invoices but offers no authority that suggests that the application was improper. Instead, the Debtor argues that enforcement of Wilson's right to apply the payments to its advantage should be conditioned because there is an equity in favor of a third party, namely Cole Taylor Bank. But the Debtor only makes a bare allegation and fails to even suggest how this is inequitable under the circumstances of this case. The gist of the Debtor's argument is that P.A.C.A. should not be used to usurp the collateral of preexisting secured creditors.

The circumstances presently before the Court are distinguishable from those cases where courts have conditioned the application of payments where the rights of sureties were adversely effected. The Debtor relies on *Alexander Lumber Co. v. Aetna Accident and Liability Co.*, 296 Ill. 500, 129 N.E. 871 (1921). *Alexander Lumber* was reviewed in *Herget National Bank*. That reliance is misplaced. In both of these cases, the payments in question were made in connection with specific contracts. The obvious distinction between those cases and the circumstances present here is that there is no surety involved in the transaction between the Debtor and Wilson, and Wilson's application of the payments to the assumed debt is totally unrelated to the Debtor's arrangement with

Cole Taylor Bank. Although Cole Taylor may be adversely effected, such effect is incidental and contemplated by P.A.C.A.

Moreover, neither the Debtor nor Wilson indicated its intent as to application of the payments. Under Illinois law, where neither party indicates how the payments are to be applied, the law will apply the payments as seems just and reasonable. *Village of Winfield for Use of Harry W. Kuhn, Inc. v. Reliance Insurance Co.*, 64 Ill.App.2d 253, 212 N.E.2d 10 (1965). Under these circumstances, the application will ordinarily be made upon the first item due. *Id.* In light of P.A.C.A. and Illinois law, it would be contrary to public policy to require Wilson to apply unspecified payments to a potentially secured debt and forego its rights to the benefits of a trust. *See, Skach v. Gee*, 484 N.E.2d 441. On the facts before the Court, there is no reason to depart from the ordinary application of payments where neither party has indicated how the payments were to be applied.

Robert Fronberry, the Debtor's president, testified that after the Debtor assumed the debt owed to Wilson by the business it purchased, Wilson required that the Debtor pay for any mushrooms ordered prior to shipment. He explained that the difference between the amount of the payments and the amount due on the invoices was that the pre-shipment payments included additional amounts towards the assumed debt. Mr. Fronberry also testified that after January 1988, the Debtor was only able to pay for current deliveries. Thus, the Debtor claims that payments made to Wilson after January 1988 were primarily on account of the orders placed thereafter, which includes the invoices dated from November 1988 to January 1989, for which Wilson alleges it is unpaid and entitled to the benefits of a trust. As further proof of the agreement as to payments, the Debtor also claims that if a payment was less than the amount of the invoice Wilson would reduce the order to match the payment. But this neither proves the Debtor's contention that the parties agreed that the payments would be applied to current shipments nor disproves Wilson's contention that the parties agreed

that the payments would be applied to the oldest invoices. If anything, the Debtor's inability to pay the amount of the current invoices suggests that the Debtor was unable to pay for current orders and continue to reduce the assumed debt. This amounts to a breach of the agreement which the Debtor claims governs the application of payments because at some point the total outstanding balance would increase rather than decrease.

Joseph Denarcio, the general manager of Wilson, testified that the parties orally agreed that the payments would be applied to the balance due on the assumed debt, so long as the total outstanding balance did not exceed a certain limit. If this is all that the parties agreed upon, then there was no agreement as to when payments for current invoices would be made, and the Debtor would not be required to pay for current invoices within any specific period of time. It is unlikely that such an open-ended arrangement was intended because the total outstanding balance could increase if payments on the assumed debt were less than the amounts due on current invoices, and no one claims that the payments on the assumed debt were required to be any particular amount.

The law is clear that, in absence of direction from the Debtor, Wilson had the right to apply the payments to its advantage. It makes perfect sense that Wilson would apply the payments to the oldest invoices because those invoices were more than thirty days old, and Wilson could pursue its remedies under P.A.C.A. for later unpaid invoices. Congress was certainly aware of the consequences of P.A.C.A., and to the extent that the effects of that provision are unfair to secured creditors, that is a judgment that Congress has made and can change if it sees fit to do so. But the Court cannot use equity as a tool to circumvent the clear import of the law.

Therefore, the Court finds and concludes that application of the payments to the oldest invoices was Wilson's right, in absence of direction from the Debtor. The Court further finds and concludes that under the circumstances surrounding this

case application of the general rule for application of payments will not work an injustice merely because it allows Wilson to seek the benefits of a trust, a right expressly provided under P.A.C.A.

The Applicability of P.A.C.A.

P.A.C.A. was designed to "suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce" and "provides a code of fair play ... and aid to [agricultural] traders in enforcing their contracts." 49 Fed.Reg. at 45737. The 1984 amendment to P.A.C.A. imposes a statutory trust on agricultural commodities and the inventories of food or other products derived therefrom, as well as any receivables or proceeds from the sale thereof, held by agricultural merchants, dealers and brokers and for which payment has not been made. The purpose of the trust is to assure that the suppliers of produce do not go unpaid because the receiver of the produce has previously granted a bank a security interest in the produce or the proceeds therefrom. 7 U.S.C. § 499e(c)(1).

This trust must be maintained for the benefit of the unpaid suppliers, sellers or agents who provided such commodities until full payment of the sums owing for the commodities has been received by them. 7 U.S.C. § 499e(c)(2). The trust provision thus offers suppliers and sellers of fruits and vegetables "a self-help tool that will enable them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." 49 Fed.Reg. at 45737. When such goods are not paid for promptly, suppliers, sellers or agents may preserve their entitlement to trust assets by filing a written notice with the Debtor and the Secretary of the United States Department of Agriculture. 7 U.S.C. § 499e(c)(3).

To preserve trust benefits under 7 U.S.C. § 499e(c), Wilson was required to give written notice of its intent to the Debtor and to file such notice with the Department of Agriculture. Section 499e(c)(3) provides in pertinent part that:

The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission, merchant, dealer, or broker and has filed such notice with the Secretary ...

The Regulations under P.A.C.A., 7 C.F.R. § 46.46(g), provide in pertinent part that:

(g) Filing notice of intent to preserve trust benefits.

(1) Notice of intent to preserve benefits under the trust must be in writing, given to the debtor, and filed with the Secretary ...

(2) Timely filing of the notice of intent to preserve trust benefits by a trust beneficiary will be considered to have been made if written notice is given to the debtor and filed with the Secretary ...

(3) An appropriate notice of intent to preserve trust benefits must be in writing, must include the statement·that it is a notice of intent to preserve trust benefits, and must include information which establishes for each shipment:

(i) The names and addresses of the trust beneficiary, seller-supplier, commission merchant, or agent, and the Debtor, as applicable,

(ii) The date of the transaction, commodity, contract terms, invoice price, and date payment was due,

(iii) The date of receipt of notice that a payment instrument has been dishonored (if appropriate),

(iv) The amount past due and unpaid.

At least one court has held that nothing less than strict compliance with the notice requirements will suffice to preserve trust benefits under P.A.C.A. *See, In re D.K. M.B., Inc.*, 95 B.R. 774 (D.Col.1989); *See also, In re Gotham Provision Co.*, 669 F.2d 1000, 1013 (5th Cir.1982), where the court strictly construed the notice provisions of the Packers and Stockyards Act, § 1 *et seq.*, 7 U.S.C. § 181 *et seq.*, a similar statutory scheme whose case law was intended by Congress to apply to interpretations of P.A.C.A.

■ The Debtor seeks to invalidate the notice because the letters were directed to the Department of Agriculture with copies to the Debtor. This notice does not rise to the level of insufficiency found in *In re D.K.M.B.*. In *D.K.M.B.*, the debtor was only given notice by the Department of Agriculture and never received notice directly from the seller. Here, the Debtor received notice directly from Wilson. Although Wilson's letters to the Department of Agriculture were not directed to the Debtor, the Debtor did receive direct notice. The fact that the notice was a copy of the letters directed to the Department of Agriculture does not change the fact that the Debtor received actual notice, and none of the authorities cited by the Debtor suggests that such a distinction is required or even relevant in assessing the sufficiency of notice. The Court finds and concludes that the Debtor received direct notice of Wilson's intent to preserve the benefits of a trust.

■ The Debtor also complains that Wilson's letters did not notify the Debtor of its statutory duties as a fiduciary under P.A.C.A. or inform the Debtor that Wilson intended to enforce the Debtor's fiduciary obligations, because the letters merely requested that trust benefits be preserved. There is nothing in this regulation that suggests that Wilson was required to inform the Debtor of its statutory duty. To read this requirement into the regulation would have the effect of requiring sellers to give buyers legal advice when buyers fail to make payment for goods received. This argument is simply without merit and enjoys no basis in law. The Debtor also attempts to distinguish "request" from "notice of intent." This is a distinction without a difference. The request that assets be preserved certainly expresses an intent to pursue the protection of P.A.C.A. It would not make sense to request that the trust benefits be preserved if Wilson did not intend to enforce its rights if the Debtor failed to make payment.

The Debtor next complains that Wilson's letters to the Department of Agriculture failed to provide all of the information required under Section 46.46(g)(3) of the Regulations because the letters did not give contract terms or payment due dates, or a statement of amounts past due. A cursory review of the letters reveals that the letters provided everything required except when payments were due. However, the invoices indicate that the terms were "net 10 days."

■ The Debtor has maintained that pursuant to an agreement, it has either paid Wilson for the invoices in question or, in the alternative, payment was not required within thirty days. The Court having found that there was no agreement as to when payment was due and that the notation "net 10 days" on the invoices gave rise to a reasonable expectation that payment would be made shortly after delivery, the Debtor has the burden of proving the existence of an agreement contrary to the requirements of P.A.C.A. and its regulations. Title 7 C.F.R. § 46.2(aa)(11), provides in pertinent part that:

> Parties who elect to use different times of payment than those set forth in paragraphs (aa)(1) through (10) of this section must reduce their agreement to writing before entering into a transaction and maintain a copy of the agreement in their records. If they have so agreed, then payment within the agreed upon time shall constitute "full Payment promptly", *Provided,* That the party claiming the existence of such an agreement for time of payment shall have the burden of proving it.

This language makes it clear that any agreement contrary the requirement of this section *must* be in writing prior to the transaction to be effective. There is no written agreement, and therefore the time for payment is governed by the statute. That ends the debate.

Therefore the Court finds and concludes that the Debtor received sufficient notice of Wilson's intent to seek the benefits of a trust. Failure to include the time of payment does not render the notice defective because in absence of an agreement to the contrary, the time for payment is supplied by the statute. The Court further finds

and concludes that the Debtor has failed to prove that the parties entered into an agreement as to time for payment.

Finally, in light of the fact that this case was converted to a case under Chapter 7 and issues raised in the Trustee's motion to abandon certain assets, the Court will continue its ruling on Wilson's complaint to determine the validity, extent and priority of its lien.

## CONCLUSION.

There was no agreement as to the application of payments and therefore Wilson was entitled to apply the payments to its best advantage, in absence of direction from the Debtor. Application of the payments to the assumed debt will not work an injustice merely because it will allow Wilson to seek the benefits of a trust.

Wilson complied with the notice requirements of P.A.C.A. and its regulations. The fact that the letters were directed to the Department of Agriculture and copies were sent to the Debtor is of no consequence since the Debtor was informed of Wilson's intent to seek the benefits of a trust. Failure to include the time of payment in the notice is also of no consequence because the parties did not agree on a particular time for payment.

Therefore, the Court finds and concludes that Wilson is entitled to the benefits of a trust. However, Wilson is not entitled to costs and attorney's fees because Wilson has failed to provide any evidence of costs and fees, and the Court is unaware of any authority that would support such an award under the circumstance of this case.

ACCORDINGLY, IT IS HEREBY ORDERED THAT Wilson's motion to segregate assets be and is hereby granted.

IT IS FURTHER ORDERED THAT Wilson's complaint to determine the validity, extent and priority of its lien be and is hereby set for further hearing on August 14, 1989, at 10:00 a.m.