HULL COMPANY and J & J Distributing Co., Appellees,

v.

HAUSER'S FOODS, INC., individually and doing business as Forest Lake Foods; Maple Foods, Inc., doing business as Rainbow Foods; Hauser's IGA, Inc., Hauser's Family Center, Inc.;

and

Gateway Foods of Minneapolis, Inc., Appellant.

No. 89–5614.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1990.

Decided Jan. 29, 1991.

**778**

Mark S. Schmitt, Milwaukee, Wis., for appellant.

Lawrence H. Meuers, St. Paul, Minn., for appellees.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

This case arises under provisions of the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. §§ 499a–499t (1988), which impose a trust upon the perishable agricultural commodities (fruits and vegetables) and their proceeds held by a buyer in favor of the seller until the seller has received full payment. Hull Company (Hull) and J & J Distributing Co. (J & J), unpaid wholesale distributors of perishable agricultural products who sold perishables to Hauser's Foods, Inc. (Hauser), a now defunct operator of retail grocery stores, brought these actions to enforce their trust rights in Hauser's assets which had been seized by Gateway Foods of Minneapolis, Inc. (Gateway), Hauser's secured creditor. Gateway had seized Hauser's assets on April 14, 1989, as a secured creditor holding a perfected security interest in all of Hauser's assets and inventory. All parties held licenses to deal in perishable agricultural commodities under PACA. 7 U.S.C. § 499d. The district court, 721 F.Supp. 224, by summary judgments entered under Federal Rule of Civil Procedure 54(b), granted trust relief to the unpaid sellers, Hull and J & J. Gateway brings this appeal.

Gateway raises two issues on appeal: (1) Hull orally agreed to a forty-five-day payment period with Hauser and J & J agreed to a thirty-day payment period with Hauser. Gateway contends that these oral agreements to extend credit beyond the payment periods established by PACA regulations disqualify both produce sellers from any trust relief, and (2) as to J & J, Gateway contends that its notice preserving trust protection did not meet regulatory requirements for entitlement to trust benefits. We reject both contentions and affirm the district court.

I. BACKGROUND

The undisputed facts substantially established by stipulation show that Hull and J & J have supplied Hauser's retail stores with perishable goods over a period of several years. Sometime during that period, Hull and Hauser orally agreed to a payment due date of forty-five days after delivery, notwithstanding that each invoice stated that payment was due ten days after delivery. Similarly, J & J and Hauser orally agreed to a thirty-day payment due date after delivery of its perishables. J & J's invoices did not disclose a payment due date.

As we have noted, Gateway held a perfected security interest in Hauser's goods and, by foreclosure on the assets and inventory of Hauser, took over operation of Hauser's business on April 14, 1989. At the time of foreclosure, Hauser owed Hull the sum of $40,737.10 and J & J the sum of $8,949.89 for unpaid invoices. Thereafter, Gateway and the sellers continued in a course of business, with Gateway paying for all subsequent purchases.

On April 17, 1989, after Gateway's foreclosure, Hull filed a notice to preserve trust benefits in compliance with the notice requirements under PACA for unpaid invoices extending from February 13 through April 14, 1989.

J & J sent a notice on April 21, 1989 to the United States Department of Agriculture (USDA) indicating that Maple Foods, an entity operated by Hauser, had failed to meet its payment obligations in compliance with PACA for invoices dating from March 6 through April 11, 1990. J & J's notice included the invoice number, commodity, date and amount shipped, and cost. It also listed the name and address of the debtor and itself. However, the notice failed to include an express statement that it constituted a notice of intent to preserve trust benefits, as well as an explicit statement as to the payment due date. *See* 7 C.F.R. § 46.46(g)(3) (1990). Nevertheless, the USDA treated the document as a notice of intent to preserve trust benefits under PACA.

By separate letter, J & J informed Maple Foods that it was filing a notice of intent to claim trust benefits with the USDA. The letter indicated that under PACA regulations, payment was due within ten days of receipt. J & J listed and attached copies of the invoices for which collection was being sought.

In May of 1989, Hull and J & J commenced this suit seeking payment from Gateway under the trust provisions of PACA. Hull and J & J moved the district court for summary enforcement of the statutory trust provisions of PACA. Gateway responded with its own motion for summary judgment. The district court granted the sellers' motions for summary judgment.

In its decision in favor of the sellers, the district court initially observed that the PACA regulations relating to trust benefits prescribe ten days as the time by which payment for produce must be made, 7 C.F.R. § 46.2(aa)(5), but that parties may, by written agreement, elect up to thirty days for payment and the seller of perishable goods will retain eligibility for trust benefits. 7 C.F.R. § 46.46(f). The district court determined that, notwithstanding the oral credit arrangements extending the time for payment beyond the ten days specified in the regulation, Hull and J & J were entitled to trust benefits under the statute and regulations.

The district court reasoned that:

if [C.F.R.] Section 46.46(f) is read as a whole, it appears that the type of agreements to which Section 46.46(f)(2) refers are written agreements. Section 46.-46(f)(1) makes clear that "parties who elect to use different times for payment must reduce the agreement to writing." The regulations and the statute also state in a number of other places that extensions of payment must be in writing. *See* 7 C.F.R. §§ 46.2(aa)(11) and 46.46(g); 7 U.S.C. § 499e(c)(3). The logical reading of the regulation then is that in order to have effect, agreements for payment beyond the 10 day limit set by 7 C.F.R. § 46.2(aa)(5) must be in writing and that 7 C.F.R. § 46.46(f)(2) bars trusts only where there is a *written* agreement in excess of 30 days.

Order dated October 5, 1989 at 5.

As to the sufficiency of J & J's notice, the district court determined that the notice given by J & J amounted to substantial compliance, sufficient to preserve trust benefits.

Defendant claims plaintiff's notices to the debtor and to the USDA lack certain information and therefore are invalid. However, although it may not be spelled out clearly, all the information required by § 46.46(g)(3) can be gotten from the letter sent by plaintiff to the debtor with its accompanying invoices. Missing from

the notice sent to the USDA by plaintiff are an explicit statement that it is a notice to preserve trust benefits and the date payment was due. However, the fact that plaintiff wished to preserve trust benefits is evident from the correspondence. Indeed, the USDA treated the letter as such a notice. Also, in the absence of any mention of an agreement to the contrary, it can be assumed that payment is due within 10 days of delivery. 7 C.F.R. § 46.2(aa)(5).

... Although the notices are not flawless and certainly could be drafted to convey this information much more clearly, the court finds they are sufficient to preserve the benefits of the trust.

Order dated December 11, 1989 at 3.

## II. DISCUSSION

### A. The statutory scheme and regulations

The original PACA enactments served "to provide a practical remedy to small farmers and growers who were vulnerable to the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities." *Chidsey v. Guerin*, 443 F.2d 584, 587 (6th Cir.1971); *see also O'Day v. George Arakelian Farms, Inc.*, 536 F.2d 856 (9th Cir.1976). To that end, PACA requires that buyers make "full payment promptly" for all commodities received from produce suppliers. 7 U.S.C. § 499b(4). Failure to satisfy the prompt payment rules gives rise to civil liabilities in favor of the injured seller, 7 U.S.C. § 499e(a), and repeated or flagrant violations may result in the revocation of a buyer's agricultural license. *Id.* § 499h(a); *In re The Caito Produce Co.*, 48 Agric. Dec. ——, No. D 88–511, slip op. (June 11, 1989); *In re Carpenito Bros.*, 46 Agric. Dec. 486 (1987), *aff'd*, 851 F.2d 1500 (D.C. Cir.1988).

While PACA generally has worked well in making the marketing of perishable agricultural commodities more orderly and efficient, H.R.Rep. No. 543, 98th Cong., 2d Sess. (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 406 (H.R.Rep. No. 543), Congress nevertheless amended PACA in 1984 to provide additional protection to produce sellers. Congress recognized that, under the prevailing law, "sellers of fresh fruits and vegetables [were] unsecured creditors and receive[d] little protection in any suit for recovery of damages where a buyer ha[d] failed to make payment as required by the contract." H.R.Rep. at 407. The statutory amendments make a legislative finding that financing arrangements made by commission merchant dealers and brokers who have not made payment for the goods deprive suppliers of payment and disserve the public interest. 7 U.S.C. § 499e(c)(1).

Congress remedied this situation by amending PACA to make produce sellers' interests in the commodities superior to those of the buyers' secured creditors. Under the amendments, buyers of perishable agricultural commodities are now required to hold the purchased commodities, and any resulting proceeds, in trust for the benefit of the sellers until the sellers are paid in full. 7 U.S.C. § 499e(c)(2).[1] The statutory

---

1. The statutory amendments, enacted May 7, 1984, in pertinent part, read as follows:

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored....

(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has

history indicates that the trust imposed on the assets of a buyer of perishable commodities related to those supplying credit on a short term basis. *In re Davis Distrib., Inc.,* 861 F.2d 416, 417 (4th Cir.1988). Congress left the specifics to the regulatory discretion of the USDA, including the task of prescribing the time "by which payment must be made." 7 U.S.C. § 499e(c)(3).

As promulgated by the USDA, the applicable regulations read as follows:

(1) The times for prompt accounting and prompt payment are set out in § 46.2(z) and (aa). Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.

(2) The maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities as defined in § 46.2(dd) and paragraph (b)(1) of this section.

7 C.F.R. § 46.46(f) (1990). "Prompt payment" in this context is defined as follows:

"Full payment promptly" is the term used in the Act in specifying the period of time for making payment without committing a violation of the Act. "Full payment promptly," for the purpose of determining violations of the Act, means:

. . . .

(5) Payment for produce purchased by a buyer, within 10 days after the day on which the produce is accepted;

. . . .

(11) Parties who elect to use different times of payment ... must reduce their agreement to writing before entering into the transaction and maintain a copy of the agreement in their records. If they have so agreed, then payment with-

in the agreed upon time shall constitute "full payment promptly", *Provided,* That the party claiming the existence of such an agreement for time of payment shall have the burden of proving it.

7 C.F.R. § 46.2(aa).

Thus, under the regulations, payment is due within ten days after delivery, unless the parties have by written agreement extended the time for payment. A written extension of the time for payment is limited to thirty days. Any written extensions greater than thirty days do not qualify for PACA trust protection.

### B. Oral Agreements

■ This case presents the issue of the effect of oral agreements on produce sellers' rights to trust protection. The precise issue does not appear to have been previously addressed in the federal appellate courts. We agree with the district court's analysis of the statute and regulations that oral agreements have no effect on produce sellers' trust protection. The statute and regulations clearly contemplate that the parties must set forth such agreements in writing to be effective.

■ Moreover, the regulations do not recognize oral agreements for a very good reason. Oral agreements to extend the prompt payment requirements essentially violate PACA. *See, e.g., In re The Caito Produce Co.,* 48 Agric.Dec. ——, No. D 88–511, slip op. (June 11, 1989); *In re Carpenito Bros.,* 46 Agric.Dec. 486, 505 (1987), *aff'd,* 851 F.2d 1500 (D.C.Cir.1988).

In *Caito,* the USDA instituted proceedings against Caito Produce Co. (Caito) for violating PACA by failing to make prompt payment. Caito asserted that it had not violated the prompt payment rules because it had obtained oral agreements for extended payment terms from its sellers and was paying promptly in accordance with those terms. None of the agreements were re-

---

received notice that the payment instrument promptly presented for payment has been dishonored. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any

such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

duced to writing. The judicial officer refused to recognize the oral agreements because the statute and the regulations clearly required agreements to extend the time for payment to be in writing to be effective. As such, Caito was bound by the time for payment set forth in the regulations and had violated PACA by failing to pay promptly under the regulation's payment term.

Therefore, based on these precedents, a buyer who enters into oral agreements to extend the time for payment beyond ten days makes arrangements to commit violations of the prompt payment provisions of PACA. Consequently, when Hauser entered into agreements with Hull and J & J to pay for perishables not in ten days but in forty-five days and thirty days, respectively, it engaged in violations of PACA. As such, it would be incongruous to disregard oral agreements for purposes of enforcing PACA but recognize them for the purpose of voiding the sellers' protection under the trust. Thus, notwithstanding the oral agreements, both sellers retained the right to demand payment within ten days and seek trust protection under PACA.

■ Finally, remedial legislation should be given a liberal construction to effectuate its statutory purpose. *International Nutrition v. United States Dep't of Health*, 676 F.2d 338, 341 (8th Cir.1982); *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). Here, the PACA amendments serve to "provide suppliers and sellers of fruits and vegetables, or their agents, [with] a self-help tool that will enable them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." 49 Fed.Reg. 45,735, 45,737 (1984). We believe that recognizing only written agreements to extend the time for payment beyond ten days best promotes the legislative scheme and the general purpose Congress has manifested.

C. Notice Provisions

■ Gateway asserts that J & J lost its trust protection because J & J's notices to preserve trust benefits did not strictly comply with 7 C.F.R. § 46.46(g)(3). The district court, however, determined that J & J's notices substantially complied with the notice requirement and sufficed to preserve trust benefits. We agree.

While a produce seller automatically receives the protection of the trust when the seller transfers produce to a buyer, a produce seller must give notice of intent to claim trust benefits to both the debtor and the Secretary in order to preserve the trust. 7 U.S.C. § 499e(c) (1990). Under 7 C.F.R. § 46.46(g),

(1) Notice of intent to preserve benefits under the trust must be in writing, given to the debtor, and filed with the Secretary within 30 calendar days [after the relevant time for payment]:

. . . .

(3) An appropriate notice of intent to preserve trust benefits must be in writing, must include the statement that it is a notice of intent to preserve trust benefits, and must include information which establishes for each shipment:

(i) The name and address of the trust beneficiary, seller-supplier, commission merchant, or agent and the debtor, as applicable,

(ii) The date of the transaction, commodity, contract terms, invoice, price, and the date payment was due,

(iii) The date of receipt of notice that a payment instrument has been dishonored (if appropriate),

(iv) The amount past due and unpaid.

The parties dispute whether this regulation requires strict compliance. Several other courts have addressed this issue and arrived at different results. *Compare In re Carlton Fruit Co.*, 84 B.R. 810 (Bankr. M.D.Fla.1988) (substantial compliance is sufficient) and *In re Annde Foods, Inc.*, 110 B.R. 346 (Bankr.N.D.Ill.1989) (same) *with In re Marvin Properties, Inc.*, 854 F.2d 1183 (9th Cir.1988) (failure to give notice to debtor forfeits trust benefits even though debtor received actual notice from Secretary) and *In re D.K.M.B., Inc.*, 95 B.R. 774 (Bankr.D.Colo.1989) (notice not

containing all mandated information did not preserve trust protection).

We are inclined to follow the approach of the cases allowing for substantial compliance. Requiring strict compliance with the regulation would thwart the remedial nature of the statute. This we refuse to do. Rather, we should liberally construe it in favor of produce sellers. H.R.Rep. No. 543 at 407.

Additionally, as PACA imposes a trust immediately upon transfer, the notice provision serves merely to notify the Secretary and the debtor of the claimed trust. Thus, as long as the Secretary and the debtor may derive the necessary information from the notice, it should suffice to preserve the trust.

Here, as found by the district court, the debtor could derive all of the required information from J & J's notice to Maple Foods, which included copies of the unpaid invoices. The fact that the letter fails to organize the information in a manner that mirrors the regulation does not render it insufficient. Simple multiplication and addition would produce the item totals and grand total.

The notice to the USDA only lacked an explicit statement that it was a notice to preserve trust benefits and the payment due date. However, the notice clearly evidences the fact that J & J wanted to preserve its trust benefits. The notice specifically stated that the buyer "has failed to comply with the PACA trust on the following invoices...." Furthermore, absent a writing, the regulations dictate that payment is due ten days from the date of delivery. Thus, we conclude that both of J & J's notices substantially complied with the regulation and sufficed to preserve its trust benefits.

## III. CONCLUSION

We affirm the district court's determination that oral agreements have no effect on produce sellers' rights to trust protection and that substantial compliance with the notice provisions suffice to preserve trust benefits. No other issues are raised by this appeal.

We further observe that the district court determined that all unpaid sales of produce within forty days of the notice of intent to preserve trust benefits by each seller qualified for trust protection. We are not called upon to approve or disapprove of that ruling on this appeal and therefore we express no opinion as to its correctness.

Accordingly, we affirm.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. For the reasons discussed below, I would hold that the sellers, Hull Co. and J & J Distributing Co. (J & J), have lost their eligibility for trust protection. Under my analysis, as set forth below, I would not reach the issue of the adequacy of the notice under 7 C.F.R. § 46.46(g)(3).

The underlying facts are not disputed. All the parties were licensed under the Perishable Agricultural Commodities Act (PACA), as amended, 7 U.S.C. §§ 499a–499t. Hull's invoices specified that payment was due 10 days after delivery; J & J's invoices did not specify any payment date. Hull orally agreed to accept payment 45 days after delivery, J & J 30 days after delivery. Hull and J & J have not been paid for certain shipments delivered before April 14, 1989. The buyer, Hauser's Foods, Inc. (Hauser), defaulted and owes Gateway Foods, Inc. (Gateway), some $13 million. Gateway seized Hauser's assets as the holder of a perfected security interest in Hauser's assets and inventory. Hull and J & J filed this lawsuit against Gateway, claiming an interest superior to that of Gateway as the beneficiaries of statutory trusts created under PACA in their favor as unpaid sellers of perishable agricultural commodities. Gateway argued that Hull and J & J failed to comply with the requirements necessary to preserve trust benefits and that J & J's notices of intent to preserve trust benefits were inadequate. The majority opinion agreed with the district court that because, under PACA and the regulations, any agreement extending the payment period beyond 10

days after delivery must be in writing, any such oral agreements have no effect and violate PACA. Slip op. at 9. The majority reasoned that if such oral agreements cannot be used by the buyer as a defense against claims for payment, then neither should the buyer's secured creditor be able to use them as a defense against the unpaid sellers' claims as PACA trust beneficiaries. *Id.* at 9–10. I disagree.

Congress amended PACA in 1984 to provide sellers of agricultural commodities with a statutory trust on certain assets of defaulting buyers in order to give sellers additional financial protection. 7 U.S.C. § 499e(c)(2); *see* H.R.Rep. No. 543, 98th Cong., 2d Sess. 3–4, *reprinted in* 1984 U.S. Code Cong. & Admin.News 405, 406–07 (House Report). Sellers who have not been paid for delivered commodities are unsecured creditors. House Report at 3. Because buyers often use the commodities as collateral to finance their business operations, their lenders become secured creditors. *Id.* The assets of buyers who go bankrupt first go to the secured creditors, leaving the seller in a precarious financial position as an unsecured creditor. *Id.* PACA remedies this by impressing a trust in favor of the unpaid seller on the buyer's inventory or proceeds that is superior to any lien or security interest in inventory held by the buyer's secured lender. House Report at 4; *see, e.g., JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 77 (2d Cir.1990).

However, sellers are not automatically protected by a PACA trust. "There are a number of procedural and substantive prerequisites to securing the protection of a PACA trust, the specifics of which [PACA] leaves largely to the regulatory discretion of the Department of Agriculture." *In re Davis Distributors, Inc.,* 861 F.2d 416, 417 (4th Cir.1988). For example, "PACA requires that buyers make 'full payment promptly' for all merchandise received from produce suppliers." *Id., citing* 7 U.S.C. § 499b(4). The regulations define "full payment promptly" as payment within 10 days of delivery. *See* 7 C.F.R. § 46.2(aa)(5). The buyer and seller may elect to use different times of payment, but they "must reduce their agreement to writing before entering into the transaction." *Id.* § 46.2(aa)(11). As noted in *In re Davis Distributors, Inc.,* "[n]one of these provisions, of course, directly implicates a seller's eligibility for the protection of a PACA statutory trust." 861 F.2d at 417. However, the regulations further provide that "[t]he maximum time for payment for a shipment to which a seller ... can agree *and still qualify for coverage under the trust is 30 days after [delivery]."* 7 C.F.R. § 46.46(f)(2) (emphasis added). Thus, under the statute and regulations, not only must any agreement providing for payment more than 10 days after delivery be in writing, the maximum payment period on which the buyer and seller may agree is limited to 30 days. *See In re Davis Distributors, Inc.,* 861 F.2d at 417; *In re Lombardo Fruit & Produce Co. (Tom Lange Co.),* 107 B.R. 952, 958–59 (Bankr.E. D.Mo.1989); *In re Lombardo Fruit & Produce Co. (Goldman Fruit & Produce Co.),* 106 B.R. 593, 599 (Bankr.E.D.Mo.1989) (citing House Report at 7 (contracts that call for payment later than 30 days should not qualify for trust coverage) and 49 Fed.Reg. 45735, 45738 (1984) (agreement for payment after 30 days will not be eligible to receive benefits of trust)); *In re Prange Foods Corp.,* 63 B.R. 211, 216 (Bankr.W.D. Mich.1986).

In the present case Hull and J & J each agreed to payment terms longer than 10 days after delivery but failed to reduce the agreement to writing as required by the statute and regulations. Hull also agreed to payment terms in excess of the 30–day limit imposed by the regulations. Because of such noncompliance, I would hold that neither seller qualified for PACA trust coverage. The sellers should not be allowed to hide behind what were essentially sham invoices in order to qualify for PACA trust coverage. Under the above analysis it is not necessary to reach the issue of the adequacy of the notice.

Accordingly, I would reverse the judgment of the district court.