

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-6-1998

# Idahoan Fresh v. Advantage Prod Inc

Precedential or Non-Precedential:

Docket 98-3169

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Idahoan Fresh v. Advantage Prod Inc" (1998). *1998 Decisions*. Paper 239.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 6, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3169

IDAHOAN FRESH, A Division of Clement Enterprises

v.

ADVANTAGE PRODUCE, INC.;
WILLIAM H. CARSON;
WILLIAM H. CARSON, III

C.H. Robinson Company (Intervenor in D.C.),
        Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 97-00237)

Submitted under Third Circuit LAR 34.1(a)
October 5, 1998

BEFORE: GREENBERG and MCKEE, Circuit Judges,
and LUDWIG, District Judge.*

(Filed October 6, 1998)

_____

*Honorable Edmund V. Ludwig, Senior United States District Judge, for
the Eastern District of Pennsylvania, sitting by designation.

Jennifer Sorce
Mark A. Amendola
Martyn & Associates
820 Superior Avenue, N.W.
10th Floor
Cleveland, OH 44113

 Attorneys for Appellant

Joseph P. McCafferty
McCafferty & Williams
2000 East 9th Street
Suite 700
Cleveland, OH 44115

 Attorneys for Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

C.H. Robinson Company ("CHR") appeals from the district court's order of November 7, 1997, denying its motion to exclude certain suppliers of perishable agricultural commodities ("produce") from the universe of unpaid suppliers entitled to recover benefits under the statutory trust created by the Perishable Agricultural Commodities Act, 7 U.S.C. S 499e(c). CHR intervened in this action filed by Idahoan Fresh ("Idahoan") against Advantage Produce, Inc. ("Advantage") to enforce the trust and challenged Idahoan's proposed schedule of qualified claimants under the trust.

The district court had jurisdiction pursuant to 7 U.S.C. S 499e(c)(5). We have jurisdiction over the district court's interlocutory order denying the exclusion of Idahoan and Alsum Produce, Inc. ("Alsum") as qualified beneficiaries pursuant to 28 U.S.C. S 1292(b) as the district court certified the order of November 7, 1997, for immediate

2

appeal and we granted CHR's Petition for Permission to Appeal.

II. FACTUAL AND PROCEDURAL HISTORY

A. Statutory and Regulatory Framework of Perishabl e Agricultural Commodities Act of 1930

We begin with a brief overview of the Perishable Agricultural Commodities Act ("PACA"). In 1930, Congress enacted PACA to promote fair trading practices in the produce industry. See 7 U.S.C. S 499a et seq.; Consumers Produce Co. v. Volante Wholesale Produce, Inc., 16 F.3d 1374, 1377 (3d Cir. 1993). In particular, Congress intended PACA to protect small farmers and growers who were vulnerable to the practices of financially irresponsible buyers.[1] See Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 780 (8th Cir. 1991). Under PACA, it is unlawful for buyers of produce, inter alia, to fail to make prompt payment for a shipment of produce. See 7 U.S.C. S 499b(4). A buyer's failure to tender prompt payment triggers civil liability and the possible revocation of the buyer's PACA license required by 7 U.S.C. S 499c. See 7 U.S.C. SS 499e(a), 449h(a). Prompt payment is defined by regulations which apply unless the parties agree otherwise in writing prior to the transaction. See 7 C.F.R. S 46.2(aa).

In 1984, Congress amended PACA to protect further certain unpaid suppliers[2] of produce by including a statutory trust provision which provides an additional remedy for sellers against a buyer failing to make prompt payment. See P.L. 98-273; H.R. Rep. No. 98-543, at 2 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406. Prior to this amendment, unpaid produce suppliers were unsecured creditors vulnerable to the buyers' practice of granting

_____

1. The statute and regulations speak in terms of "commission merchant, dealer and broker." See 7 U.S.C. S 499a et seq. For ease of reference, we refer to these participants as "buyers."

2. The statute and regulations use the terms "supplier, seller, or agent." This opinion refers to the these participants interchangeably as suppliers or sellers.

3

other creditors a security interest in their inventory and accounts receivable. See Tom Lange Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit & Produce Co.), 12 F.3d 806, 808-09 (8th Cir. 1994) (citing H.R. Rep. No. 98-543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 407). Under the 1984 provision, a buyer's produce, products derived from that produce, and the proceeds gained therefrom are held in a non-segregated, floating trust for the benefit of unpaid suppliers who have met the applicable statutory requirements. See 7 U.S.C. S 499e(c); 7 C.F.R. S 46.46(b). Thus, the provision gives certain unpaid sellers of produce an interest in the PACA trust assets superior to that of a perfected, secured creditor. See Consumers Produce, 16 F.3d at 1379. In a 1995 amendment to PACA, which we discuss below, Congress made procedural changes in the trust fund provisions. See P.L. 104-48,S 6, 7 U.S.C. S 499e(c)(4).

To enforce its rights under the statutory trust, a qualified beneficiary may file a claim in the district court immediately upon the buyer's failure to tender prompt payment. See 7 U.S.C. S 499e(c)(5). A qualified unpaid seller remains entitled to benefits until paid in full. See 7 C.F.R. S 46.46(c)(1). A seller eligible for the statutory trust benefits must preserve its rights by satisfying a notice requirement by either sending notice to the buyer within 30 days of a payment default or, as provided in the 1995 amendment to PACA, including a statutory statement referencing the trust on its invoices. See 7 U.S.C. S 499e(c)(3), (4); 7 C.F.R. S 46.46(c), (f). While a seller may agree in writing to a payment period other than that defined in the regulations as prompt, an unpaid seller loses its right to participate in the trust if it agrees in writing to extend the payment period beyond 30 days. See 7 C.F.R. S 46.46(e)(2). The issue presented by this appeal is whether a seller also forfeits its right to participate in the PACA trust if it fails to reduce to writing an agreement to extend the payment term.

B. Current Dispute

Over a period of several months, Advantage purchased produce from Idahoan, CHR, Alsum, O.P. Murphy & Sons ("Murphy"), and Powerhouse Produce, L.L.C.

4

("Powerhouse"). The details of these transactions are not in dispute.3

In a series of transactions from August 7, 1996, through December 28, 1996, Idahoan sold a total of $116,684.26 worth of produce on credit to Advantage. See app. 9.4 All of Idahoan's invoices to Advantage contain the language required under 7 U.S.C. S 499e(c)(4), the 1995 PACA amendment, to notify the buyer that the seller intends to preserve its trust claim against the buyer. Idahoan and Advantage did not enter into a written agreement extending the payment term which, in this case, in the absence of a written agreement altering the term, is ten days. See 7 C.F.R. S 46.2(aa)(5). However, William Carson, president of Advantage, alleges that they had an oral agreement extending the payment term to 20 days. Additionally, 28 of the 30 outstanding invoices issued by Idahoan to Advantage stated "PAYMENT TERMS: Net 20 days." The remaining two invoices contain no payment term.

Alsum sold, on credit, a total of $10,708.00 worth of produce to Advantage in two transactions on October 9 and 24, 1996. Alsum and Advantage did not enter into a written agreement extending the payment term. As with Idahoan, Carson claims that Alsum and Advantage had an oral agreement to extend the term, though in Alsum's case the extended term was 15 rather than 20 days. Notwithstanding the oral agreement, both of Alsum's unpaid invoices state "PAYMENT TERMS: NET 10." Both invoices also contain the statutory language as provided in the 1995 PACA amendment notifying Advantage that Alsum intended to preserve its PACA trust claim.

CHR sold $36,004.80 worth of produce to Advantage pursuant to their written agreement to extend the payment term to 30 days. CHR's invoices for these sales included a

_____

3. Because there seems to be no dispute that Murphy and Powerhouse are qualified PACA trust beneficiaries, we need not be concerned with the details of their transactions with Advantage. Our discussion of the facts therefore is limited to Advantage's transactions with Alsum, Idahoan, and CHR.

4. Citations to the appendix refer to the tab number because the pages of the Appendix are not numbered continuously.

payment term of 30 days as well as the statutory language required to preserve its interest in the PACA trust. See app. 5.

Advantage failed to pay Idahoan, Alsum, and CHR the amounts due on these outstanding invoices. On February 10, 1997, Idahoan filed a complaint against Advantage and its officers, William Carson and William Carson III, for damages and injunctive relief alleging violations of PACA based upon Advantage's failure to pay its invoices and breach of the statutory trust. The district court issued a temporary restraining order on February 11, 1997, enjoining the defendants from further dissipating the constructive trust imposed by 7 U.S.C. S 499e(c). On February 20, 1997, Idahoan and Advantage filed a Stipulated Order for Preliminary Injunction which stated a procedure for identifying all of Advantage's qualified and unpaid PACA trust creditors.

CHR intervened as a party plaintiff in the action on May 27, 1997. See app. 5. On June 2, 1997, Idahoan and Advantage filed a Joint Status Report and Motion for an Order for the Distribution of PACA Trust Proceeds ("Joint Motion") identifying the following universe of qualified PACA trust creditors:

| | |
|---|---|
| Idahoan | $ 116,684.26 |
| CHR | 36,004.80 |
| Murphy | 4,300.00 |
| Alsum | 10,708.00 |
| Powerhouse | 4,868.00 |
| | $ 172,565.06 |

App. 6.

Although CHR was a party to the action at the time Advantage and Idahoan filed the Joint Motion, they did not consult CHR or invite CHR to join in the Joint Motion. On June 5, 1997, CHR filed an objection to the Joint Motion and served discovery requests upon Advantage seeking documents which established the alleged qualified status of the creditors set forth in the Joint Motion. See app. 7. CHR then filed a Motion to Exclude Alsum and Idahoan from the universe of qualified PACA trust creditors on the grounds

6

that they failed to comply with the statute and regulations. In particular, CHR argued that Idahoan and Alsum orally agreed to extend the payment term beyond the ten-day period established in the regulations, and they were, therefore, not qualified PACA trust creditors because the agreements were not reduced to writing prior to the transaction. See app. 9.

At the time of briefing on this appeal, the total amount of available PACA trust funds was approximately $45,000.00. See Br. for Appellant at 5. If Idahoan and Alsum are excluded from the universe of qualified trust beneficiaries, the total qualified and unpaid trust claims would be $45,172.80. Thus, their exclusion would result in payment virtually in full, rather than a small pro-rata portion, to the qualified PACA trust creditors, CHR, Powerhouse, and Murphy.

On November 7, 1997, the district court issued an order denying CHR's Motion to Exclude Idahoan and Alsum citing "the reasons stated of record at the argument of the motion." App. 12. Following argument on CHR's motion to exclude, the district court stated that an oral agreement to extend a payment term is totally ineffective and, provided that the supplier complies with the notice provisions of the statute, it is a qualified PACA trust beneficiary. See Br. for Appellee, Attach. at 11-12.5 Thereafter, CHR filed a motion for reconsideration or, in the alternative, certification pursuant to 28 U.S.C. S 1292(b). On December 1, 1997, the district court certified the November 7, 1997 order, for immediate appeal, the controlling question of law being whether Idahoan and Alsum "perfected their trust claims under PACA." On February 19, 1998, we granted CHR's Petition for Permission to Appeal. See app. 1, 14.

III. DISCUSSION

CHR contends that the district court erred in finding that Idahoan and Alsum were qualified to receive statutory benefits under PACA. According to CHR, the plain

_____

5. A partial transcript of the argument is included as an Attachment to the Brief for the Appellee, Idahoan.

language, legislative history, and purposes of the statute and regulations lead to the conclusion that a seller forfeits its right to PACA trust benefits if it orally agrees to extend the payment term beyond that established in the regulations as prompt, in this case, ten days.

There is no dispute that Idahoan and Alsum did not reduce to writing their agreements to extend the payment period in their transactions with Advantage. There is also no dispute that Idahoan's and Alsum's invoices properly notified Advantage of their intent to preserve their right to statutory benefits under 7 U.S.C. S 499e(c)(4). Thus, as we have indicated, this appeal raises the following issue regarding the proper interpretation of PACA: whether an agreement to extend the payment term beyond the time defined by the regulations as prompt must be in writing in order for the seller to qualify for the benefits of the PACA trust. Because this appeal concerns solely the legal issue of the proper interpretation of statutes and regulations, we exercise de novo review over the district court's order. See Shell Oil Co. v. Babbit, 125 F.3d 172, 175 (3d Cir. 1997).

We initially point out that certain general precepts guide us on this appeal. The role of the courts in interpreting a statute is to give effect to Congress's intent. See Negonsott v. Samuels, 507 U.S. 99, 104, 113 S.Ct. 1119, 1122-23 (1993). Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with plain language of the statute itself. See Santa Fe Med. Servs., Inc. v. Segal (In re Segal), 57 F.3d 342, 345 (3d Cir. 1995) (citing Mansell v. Mansell, 490 U.S. 581, 588, 109 S.Ct. 2023, 2028 (1989)); United States v. Pelullo, 14 F.3d 881, 903 (3d Cir. 1994). Where the statutory language is plain and unambiguous, further inquiry is not required, except in the extraordinary case where a literal reading of the language produces an absurd result. See In re Segal, 57 F.3d at 346. Moreover, a court may depart from the plain language of a statute only by an extraordinary showing of a contrary congressional intent in the legislative history. See Garcia v. United States, 469 U.S. 70, 75, 105 S.Ct. 479, 482 (1984).

8

In interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous. See United States v. State of Alaska, ___ U.S. ___, 117 S.Ct. 1888, 1918 (1997); United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 550, 116 S.Ct. 1529, 1533 (1996) (reading which gives effect to all of a statute's provisions prevails over one which disregards a provision as legislative oversight); First Bank Nat'l Ass'n v. FDIC, 79 F.3d 362, 367 (3d Cir. 1996); Insurance Co. of N. Am. v. Cohn (In re Cohn), 54 F.3d 1108, 1115 (3d Cir. 1995). This basic tenet of statutory construction applies equally to the interpretation of regulations. See Silverman v. Eastich Multiple Investor Fund, LP, 51 F.3d 28, 31 (3d Cir. 1995) (dealing with canon that court should construe statutory language so that all provisions are given effect); LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Management Comm'n, 866 F.2d 616, 623 (3d Cir. 1989) (regulation which conflicts with statute under which it was promulgated is ineffective, but court should endeavor to reconcile the two). Thus, the preferred construction of a statute and its regulations is the one that gives meaning to all provisions. See United States v. Higgins, 128 F.3d 138, 142 (3d Cir. 1997).

In addition to following these general canons of statutory construction, we are mindful that PACA, which was enacted to protect unpaid suppliers of produce and alleviate the burden of nonpayment on commerce, see 7 U.S.C. S 499e(c)(1); H.R. Rep. No. 98-543, at 3-4 (1983), reprinted in 1984 U.S.C.C.A.N. at 407, is remedial legislation which a court should construe broadly to effectuate its purpose. See Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553 (1967); RNS Servs., Inc. v. Secretary of Labor, Mine Safety & Health Admin., 115 F.3d 182, 186-87 (3d Cir. 1997); see also Hull, 924 F.2d at 782; Exportal LTDA. v. United States, 902 F.2d 45, 46 (D.C. Cir. 1990); Harry Klein Produce Corp. v. United States Dep't of Agric., 831 F.2d 403, 405 (2d Cir. 1987).

With these principles in mind, we begin our analysis with the statutory and regulatory language. The statute and

9

regulations refer, in numerous instances, to the requirement that an agreement to extend the prompt payment period be in writing. This appeal requires us to determine whether that requirement relates only to the enforceability of such an agreement or is a precondition to a seller's qualification for trust benefits. We turn first to the section of the statutory trust provision which refers to the writing requirement.

The statutory trust provision provides that the produce, products derived from that produce, and any proceeds gained therefrom are held in trust by the buyer for the benefit of unpaid sellers until such sellers are paid in full. See 7 U.S.C. S 499e(c)(2). Two subsections condition this provision by requiring an unpaid seller to preserve its rights to the trust benefits by notifying the buyer of its intent to do so, 7 U.S.C. S 499e(c)(3), which we discussfirst, and 7 U.S.C. S 499(c)(4), which we discuss below. In the context of establishing this notice requirement, the statute refers to the mandate that an agreement must be in writing. In particular, the statute provides that

> (3) The unpaid supplier . . . shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the [buyer] within thirty calendar days (i) after the expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary; [or] (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction . . . . When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

7 U.S.C. S 499e(c)(3).6

_____

6. Section 499e(c)(3) also provides that proper notice may be given within 30 days after the seller receives notice that the payment instrument presented by the buyer had been dishonored. See 7 U.S.C. S 499e(c)(3). The facts of the transactions in this case do not implicate this portion of the statute.

10

According to CHR, the plain language of section 499e(c)(3), in particular Congress's use of the term"shall," unambiguously requires that an agreement to extend the payment term be in writing in order for the seller to preserve its PACA trust benefits. This reading overstates what the subsection requires. The statute provides that an unpaid seller "shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of such trust." 7 U.S.C. S 499e(c)(3) (emphasis added). The remainder of that sentence establishes the time period in which such notice must be given. In the context of defining timely notification, the statute then provides that agreements to extend payment terms must be in writing and that parties shall maintain a copy of such an agreement and disclose the terms of the agreement on invoices and other documents relating to the transaction. See 7 U.S.C. S 499e(c)(3); see also 7 C.F.R. S 46.2(aa)(11).

Thus, Congress, using the verb "shall," unambiguously intended that a seller timely notify the buyer of its intent to preserve its rights to PACA trust benefits. The plain and unambiguous language of the section does not provide, however, that a written agreement is a precondition of being entitled to the statutory trust benefits. Rather, the requirement is relevant to assessing when prompt payment is due and therefore when notice is timely.

The plain language of the regulations supports this reading of the statute. The regulations first mention the writing requirement in the context of defining prompt payment. As noted above, the regulations establish times for prompt payment for various scenarios. See 7 C.F.R. S 46.2(aa)(1) – (10); 7 U.S.C. S 499e(c)(3). In this case, the regulations provide that, unless agreed otherwise in writing, prompt payment is defined as payment within ten days of the buyer's acceptance of the produce. See 7 C.F.R. S 46.2(aa)(5). The regulations also provide that

> [p]arties who elect to use different times of payment than those set forth [herein] must reduce their agreement to writing before entering into the transaction and maintain a copy of the agreement for their records. If they have so agreed, then payment within the agreed upon time shall constitute `full

11

payment promptly': Provided, That the party claiming
the existence of such an agreement for time of payment
shall have the burden of proving it.

7 C.F.R. S 46.2(aa)(11). This section unambiguously
requires that an agreement to extend a payment term must
be in writing prior to the transaction.

The regulations concerning the statutory trust also refer
to the writing requirement. In particular, the regulation
provides that

> [w]hen a seller, supplier or agent who has met the
> eligibility requirements of paragraphs (e)(1) and (e)(2) of
> this section, transfers ownership, possession, or
> control of goods to a commission merchant, dealer, or
> broker, it automatically becomes eligible to participate
> in the trust. Participants who preserve their rights to
> benefits in accordance with paragraph (f) of this section
> remain beneficiaries until they are paid in full.

7 C.F.R. S 46.46(c)(1). Subsection (f) requires that the seller
properly notify the buyer of its intent to preserve its PACA
trust benefits. See 7 C.F.R. S 46.46(f).[7] The "eligibility"
requirements of paragraphs (e)(1) and (e)(2) provide the
following:

> (e) Prompt payment and eligibility for trust benefits.
>
> (1) The times for prompt accounting and prompt
> payment are set out in S 46.2(z) and (aa). Parties who
> elect to use different times for payment must reduce
> their agreement to writing before entering into the
> transaction and maintain a copy of their agreement for
> their records, and the times of payment must be

_____

7. This regulation refers to the writing requirement in the same context,
and virtually to the same extent, as 7 U.S.C. S 499e(c)(3). In particular,
the regulation provides that a seller's notice of an intent to preserve
the
right to PACA trust benefits is timely if given 30 days "[a]fter
expiration
of such other time by which payment must be made as the parties have
expressly agreed to in writing before entering into the transaction, but
not longer than [30 days]." 7 C.F.R. S 46.46(f)(2)(ii). We therefore
conclude that this section's reference to the writing requirement has the
same effect as that of 7 U.S.C. S 499e(c)(3) discussed above.

12

disclosed on invoices, accountings, and other documents relating to the transaction.

(2) The maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities as defined in S 46.2(dd) and paragraph (a)(1) of this section.

7 C.F.R. S 46.46(e). As in the statute, section (e)(1) of this regulation discusses the writing requirement in the context of defining prompt payment for a given transaction. Section (e)(2) explicitly provides that a seller is disqualified from receiving trust benefits if it agrees to extend the payment term longer than 30 days from the buyer's acceptance of the produce. The existence of such an explicit disqualification supports our view that the writing requirement is not a prerequisite to eligibility to participate in the PACA trust.

Under CHR's view, these regulations establish eligibility requirements separate from the notice requirement to preserve eligibility. CHR argues that the eligibility requirements for sellers who agree to payment terms beyond ten days are that such an agreement be reduced to writing, those terms be included on all invoices regarding the transaction, and that eligibility is lost if the parties agree to a payment term over 30 days. CHR asserts that these prerequisites do not apply where there is not an agreement to extend a payment term. The plain language does not support this interpretation.

The plain language of the statute and regulations requires that an agreement establishing a "prompt payment" period other than that established in the regulations must be in writing. The plain language also provides that an unpaid seller loses its right to PACA trust benefits if (1) it does not timely notify the buyer of its intent to preserve that right or (2) it agrees to a payment period beyond 30 days. Because we liberally interpret PACA to further its remedial purposes of reducing the burden on commerce and protecting unpaid sellers, we find that the writing requirement relates to the enforceability of an agreement to extend a payment term, but does not disqualify an unpaid seller from receiving trust benefits.

13

Idahoan and Alsum satisfied the notice requirement by including the requisite language on the face of their invoices to Advantage, see 7 U.S.C. S 499e(c)(4), and neither party agreed to a payment period over 30 days.[8] Their failure to reduce their oral agreements with respect to the payment term to writing does not disqualify them, and they therefore are entitled to share in a pro-rata distribution of the statutory trust res until they receive payment in full.

In so holding, we join the United States Court of Appeals for the Eighth Circuit, the only other court of appeals of which we are aware which has addressed the precise issue presented by this appeal, in concluding that a supplier's failure to reduce to writing an agreement to extend the payment term does not disqualify that supplier as a PACA trust beneficiary. See Hull, 924 F.2d 777. In Hull, two unpaid wholesale distributors of produce, Hull & J.J. Distributing, instituted suit against a defunct retail grocery store, Hauser's, to enforce their PACA trust rights. See id. at 778. Some of the retail store's assets were seized by one of the store's secured creditors, Gateway, who held perfected security interests in all of the store's assets and inventory. See id. at 778.

It was undisputed that Hull and J.J. Distributing supplied Hauser's with produce over several years and that during that time the two suppliers orally agreed to a payment period of 45 days and 30 days after delivery, respectively. See id. Hull's invoices to Hauser indicated this as the payment period, while J.J. Distributing's invoices did not indicate any payment term. See id.

The district court held that Hull and J.J. Distributing were entitled to trust benefits for their unpaid invoices notwithstanding the fact that they had not reduced their payment term extensions to writing. See id. at 779. Finding that the two suppliers had given Hauser's sufficient notification of their intent to preserve their PACA trust rights, the district court held that while the plain language of the statute makes oral agreements extending the

_____

8. We are not reaching the issue of what would happen if the oral extension provided for a payment period in excess of 30 days because that situation is not before us in this case. See 7 C.F.R. S 46.46(e)(2).

payment term unenforceable, it only disqualifies a supplier from trust benefits where the supplier enters into a written agreement to extend the payment term beyond 30 days. See id.

The court of appeals affirmed the district court,finding that "oral agreements have no effect on produce sellers' trust protection." Id. at 781. According to the court, a buyer who orally agrees to an extension of the payment term beyond ten days makes an arrangement to violate PACA's prompt payment provision. See id. at 782. The court found that

> it would be incongruous to disregard oral agreements for purposes of enforcing PACA but recognize them for the purpose of voiding the sellers' protection under the trust. Thus, notwithstanding the oral agreements, both sellers retained the right to demand payment within ten days and seek trust protection under PACA.

Id. at 782.9 In concluding its discussion of this issue, the

(Text continued on page 17)

_____

9. We note that the Court of Appeals for the Eighth Circuit has suggested a conflicting result in two subsequent decisions. See Tom Lange Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit & Produce Co.), 12 F.3d 806, 809 (8th Cir. 1993) (hereinafter In re Lombardo II); Goldman Fruit & Produce Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit & Produce Co.), 12 F.3d 110 (8th Cir. 1993) (hereinafter In re Lombardo I). These two cases concern disputes between two different produce suppliers and a single buyer. In both instances, the court held that the unpaid seller was not entitled to PACA trust benefits. See 12 F.3d at 809; 12 F.3d at 113.

In In re Lombardo I, although letters and the invoices indicated an extended payment period, there was no written agreement which complied with all respects of PACA and its regulations. See 12 F.3d at 113. There was also evidence of an oral agreement to extend the payment term. In the absence of a valid written agreement under PACA to extend the payment term, the court first stated that it could not measure the timeliness of notice based upon the extended payment term. See id. Then the court rejected the supplier's argument that its notice to the buyer was within 30 days of the expiration of the payment period established in the regulations. The court held that

> [t]he evidence in the record clearly demonstrates that the parties had an agreement to extend the payment terms beyond the ten days

in the regulations. Though this agreement is insufficient to preserve
Goldman's trust protection, it is a valid contract between the
parties. A predicate to the trust protection is the requirement that
payment is delinquent; having agreed to extend the payment period
beyond ten days, it would be incongruous to permit Goldman to now
claim that no agreement existed and that payment was therefore
due within ten days.

Id. at 113 (citation omitted).

In making this statement, the In re Lombardo I court cited the opinion
in Bowlin & Son, Inc. v. San Joaquin Food Serv., Inc. (In re San Joaquin
Food Serv., Inc.), 958 F.2d 938, 941 n.2 (9th Cir. 1992). Our reading of
In re San Joaquin suggests that the In re Lombardo I court may have
cited it for a proposition In re San Joaquin did not state. Furthermore,
In re Lombardo I did not question Hull. In the circumstances, to the
extent, if any, that the language in In re Lombardo I conflicts with Hull,
we find it unpersuasive.

In In re Lombardo II, the supplier and the buyer entered into a written
agreement prior to the transaction to extend the payment term to 30
days. See 12 F.3d at 809. This agreement complied with PACA and its
regulations in all respects. See id. Thereafter, the parties modified the
agreement in writing in such a manner that no longer complied with
PACA. See id. Although the court does not explain this subsequent
written agreement or explicitly state in what manner it no longer
complied with PACA, the opinion suggests that the agreement extended
the payment term beyond 30 days, for which PACA explicitly disqualifies
a seller as a trust beneficiary. The court found that, at that time, "an
agreement complying with PACA no longer existed. There being no
written agreement complying with PACA, Lange is prohibited from
claiming PACA's trust protection." Id. at 807 (footnote omitted). The court
further stated that

PACA imposes a trust upon the funds held by delinquent
purchasers if a written agreement required payment within thirty
days of delivery. Thus, at the time trust protection is claimed, there
must exist a valid written agreement complying with PACA's terms.

Id. at 809-10.

This language could be read to imply that without a written agreement
to extend the payment term, the seller is not entitled to trust benefits.
Although we believe that such a result would be incorrect in light of the
explicit holding to the contrary in Hull, we note the potential conflict as

court also noted that a liberal construction of the statute is appropriate because it is remedial legislation. See id. at 782.10

CHR argues that Hull is not applicable to this case because it was decided prior to Congress's 1995 amendment to the PACA statutory trust which, it argues, changed the statutory landscape. In 1995, Congress added section 499e(c)(4) which provides, as an alternative to the post-delinquency methods outlined in subsection 3, an invoicing method of notifying the buyer of a seller's intent to preserve its right to trust benefits. See 7 U.S.C. S 499e(c)(4). According to CHR, because there was no invoice-notification method under PACA at the time the court decided Hull, the payment terms were crucial to determining the timeliness of the notice. CHR asserts that the rationale of Hull is inapplicable to this case where the timeliness of the notice is irrelevant because the sellers complied with the invoice-notification provision. In essence, CHR asserts that our interpretation renders the writing requirement meaningless in cases such as this where the supplier invokes invoice notification.

The purpose of the 1995 amendment was to remove the expense to the United States Department of Agriculture in administering the trust provisions. See H.R. Rep. No. 104-207, at 9 (1995), reprinted in 1995 U.S.C.C.A.N. 453, 456. Under the 1995 amendment, a seller may satisfy the notice requirement by including on its regular invoicing documents a statutory statement indicating the intent to preserve its trust rights. See id. An invoice which serves as notice to preserve a seller's trust rights also must include "[t]he terms of the payment if they differ from prompt

_____

we are unsure of the court's intentions. Of course, the court may have meant nothing more than that the trust protection was lost because the payment period was extended in writing beyond 30 days contrary to 7 C.F.R. S 46.46(e)(2). If so, In re Lombardo II is not inconsistent with Hull which involved an oral extension by one seller to 45 days.

10. We recognize that one of the suppliers in Hull agreed to a payment period of 45 days. As we have indicated, we are not reaching the issue of what would happen if the oral extension provided for a period in excess of 30 days. See n.8, supra. The Hull court did not distinguish between a 30-day and 45-day period.

17

payment set out in section 46.2(z) and (aa) of this part, and the parties have expressly agreed to such terms in writing before the affected transactions occur." 7 C.F.R. S 46.46(f)(3)(ii). The writing requirement therefore is not rendered superfluous under our interpretation of the statute where the seller invokes the invoice-notification provision. Rather, a written agreement to extend the payment period gives rise to the obligation to include the payment term on the invoice which serves as notice of the seller's intent to preserve it PACA rights.

District courts in other circuits have followed, either implicitly or explicitly, the Court of Appeals for the Eighth Circuit's approach in Hull. See A & J Produce Corp. v. CIT Group/Factoring, Inc., 829 F. Supp. 651, 655 (S.D.N.Y. 1993) (holding that only a written agreement to extend a payment term beyond 30 days forfeits the seller's rights, so that in the absence of a written agreement otherwise, a seller is entitled to enforce its right to full payment against the buyer within ten days of delivery of the produce); Continental Fruit Co. v. Thomas J. Gatziolis & Co., 774 F. Supp. 449, 452 (N.D. Ill. 1991) (holding that evidence of a course of dealing between the parties accepting payment beyond 30 days does not forfeit an unpaid seller's right to statutory benefits); C.H. Robinson Co. v. B.H. Produce Co., 723 F. Supp. 785, 797 (N.D. Ga. 1989), aff'd sub nom., C.H. Robinson Co. v. Trust Co. Bank, N.A., 952 F.2d 1311 (11th Cir. 1992) (discussing the lack of a written agreement to extend the payment period only in reference to the timeliness of the notice). In each of these cases, there was no evidence of a prior written agreement to extend the payment term, yet the courts held that the unpaid sellers were entitled to PACA trust benefits if they notified the buyers within 40 days after the delivery of the produce, which is 30 days after the expiration of the ten-day prompt payment period established by the regulations.

In addition, at least one court has described the PACA writing requirement for agreements to extend payment terms as being in the nature of a statute of frauds. See Debruyn Produce Co. v. Richmond Produce Co. (In re Richmond Produce Co.), 112 B.R. 364, 374 (Bankr. N.D. Cal. 1990). In In re Richmond, the court was faced with the

18

issue of whether certain notices were timely to preserve the sellers' rights to statutory trust benefits. Finding that certain letters satisfied the writing requirement and therefore validly extended the payment term, the court found that the notices sent were timely because they were sent within 30 days of the expiration of the extended payment period. In so holding, the court commented that

> the purpose of the writing requirement is to preclude uncertainties as to the applicable payment terms and the resulting deadline for filing a PACA notice. Thus, the provision at issue is in the nature of a statute of frauds and serves the same purpose. This conclusion is supported by the statutory requirement that both parties maintain a copy of the agreement in their records and that the terms of the payment be disclosed on `invoices. . . .'

Id. at 374 (citation omitted). Thus, the court viewed the writing requirement as relevant to assessing when prompt payment is due and not as a precondition to preserving statutory trust benefits.

CHR urges this court to join those courts which have required strict compliance with the preconditions of the statutory trust.11 See, e.g., Bowlin & Son, Inc. v. San

_____

11. Most of the case law considering whether strict or substantial compliance is necessary addresses the notice requirement. There is authority in support of both positions. Compare Anic, Inc. v. Chipwich, Inc. (In re Chipwich, Inc.), 165 B.R. 135, 136 (Bankr. S.D.N.Y. 1994) (requirements of notice to preserve trust must be complied with strictly such that wrong name on notice renders it ineffective); Blair Merriam Fresh Fruit & Produce Co. v. Clark (In re D.K.M.B., Inc.), 95 B.R. 774, 779
(Bankr. D. Colo. 1989) (requiring strict compliance with content of notice); In re Marvin Properties, Inc., 854 F.2d 1183, 1186 (9th Cir. 1988)
(requiring notice to be given by seller itself andfinding that the buyer's actual knowledge of the seller's intent was insufficient to preserve its statutory PACA trust benefits) with In re Richmond Produce Co., 112 B.R. 364 (Bankr. N.D. Cal. 1990) (holding that substantial compliance with notice requirement is sufficient to preserve right to trust benefits such that early notification or notice lacking certain information is effective);
Dubin v. Carlton Fruit Co. (In re Carlton Fruit Co.), 84 B.R. 810 (Bankr. M.D. Fla. 1988) (requiring substantial compliance with requirements for

19

Joaquin Food Serv., Inc. (In re San Joaquin Food Serv., Inc.), 958 F.2d 938, 940 (9th Cir. 1992) (requiring strict compliance with the clear mandate of Congress to include the payment term on an invoice); In re John DeFrancesco & Sons, Inc., 114 B.R. 335, 336 (Bankr. D. Mass. 1990) (requiring strict compliance with the preconditions of participation in trust benefits). But, this case presents the issue of whether the writing requirement is a precondition to qualification as a PACA trust beneficiary. Only if we answered that question positively would we be required to reach the issue of whether strict or substantial compliance with that requirement was necessary to preserve properly an unpaid seller's right to receive benefits. Having found that it is not and is rather only relevant to determining what constitutes prompt payment in a given transaction, we need not decide today whether strict compliance with the requirements of PACA trust eligibility is required.

Nonetheless, we recognize that these cases support the interpretation urged by CHR. Although the Court of Appeals for the Ninth Circuit has not addressed explicitly the precise issue presented by this appeal, its ruling on a similar issue suggests a conclusion other than the one we reach today. In In re San Joaquin the court held that a produce supplier was not entitled to PACA trust benefits where the invoices it issued to the buyer did not contain the payment term agreed upon by the two parties in writing prior to the transaction. See 958 F.2d 938.

In In re San Joaquin, there was no dispute that the supplier gave the buyer timely notice of its intent to preserve its interest in the trust or that the agreement to extend the payment term was in writing. See id. at 939-40. Thus, the sole issue presented was whether the supplier's failure to include the payment term on the invoice forfeited

_____

notice such that failure to include date of transaction, contract terms and amount due did not render notice ineffective to preserve benefits of the statutory trust); In re W.L. Bradley Co., 75 B.R. 505, 511 (Bankr. E.D. Pa. 1987) (holding that premature filing of notice under section 499e(c)(3) was effective). Because there is no dispute that Alsum and Idahoan complied with the invoice-notice provision, we need not address this issue today.

20

its rights to the PACA trust. As discussed above, 7 U.S.C. S 499e(c)(3) requires that "[w]hen the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall befiled in the record of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction." (emphasis added). The In re San Joaquin court found that the provision relating to the disclosure of the payment terms on invoices was a requirement to preserve a supplier's trust rights. See id. at 940. The court found that because this was a clear mandate of Congress as expressed in unambiguous statutory terms, sellers must comply strictly with it to receive trust benefits. See id.

It is possible that the Court of Appeals for the Ninth Circuit also would hold that the requirement of a written agreement to extend the payment term beyond the period prescribed in the regulations is a prerequisite to preserving a supplier's rights to PACA trust benefits. After all, that requirement is in the same clause in 7 U.S.C. S 499e(c)(3) as the requirement that extended payment terms be indicated on invoices.

In re John DeFrancesco & Sons, Inc., 114 B.R. 335, also is inconsistent with the interpretation of PACA that we have adopted. The court held that

> in order to preserve its PACA trust benefits under the statute, [the seller] must prove that it strictly complied with all the necessary statutory requirements. By not offering evidence of an agreement in writing before the transaction was entered into, [the seller] fails to meet its burden of proof that it strictly complied with the statute.

114 B.R. at 338 (citing In re Lombardo, 106 B.R. 593 (Bankr. E.D. Mo. 1989)). Thus, the court implicitly held that the writing requirement is a precondition to eligibility as a trust beneficiary with which sellers must comply strictly.

As discussed above, under our reading of the statute and the regulations, the plain language does not support the result reached by these cases. Guided as we must by the

21

plain language, we therefore find them unpersuasive. Moreover, a departure from the plain meaning of PACA is not warranted because we find no extraordinary showing of congressional intent otherwise in the legislative history. On the contrary, the legislative history supports our reading of PACA and its regulations. Like the statute and the regulations, the legislative history explicitly refers to two requirements for an unpaid supplier to qualify for trust benefits: (1) that the seller notify the buyer of its intention to preserve its rights and (2) that an agreement to extend the payment period not be beyond a reasonable time. See, e.g., H.R. Rep. No. 98-543, at 4 (1983), reprinted in 1984 U.S.C.C.A.N. at 407-08 ("[T]he unpaid seller must accept the burden to preserve the trust by notifying both the Secretary and the commission merchant, dealer or broker within 30 days after expiration of the prompt payment date or date on which a payment instrument has been dishonored, or the trust benefits will be lost."); id. at 7, reprinted in 1984 U.S.C.A.A.N. at 410 ("[T]he committee does not intend the trust to apply to any credit transaction that extends beyond a reasonable period. . . . [T]he secretary is required to establish, through rulemaking, the time by which, the parties to a transaction must agree payment on a transaction must be made, to qualify it for coverage under the trust. An agreement for payment after such time will not be eligible to receive the benefits of the trust."); 49 Fed. Reg. 45735, 45739 (1984) ("The legislation is clear that an absolute precondition to pursuing trust assets held by a defaulting buyer or receiver is thefiling of a written notice by the seller, supplier or agent after a failure to pay within the prescribed periods has elapsed.").

Finally, we reject CHR's argument that requiring strict compliance with the writing requirement, such that a seller loses it right to statutory benefits if an agreement to extend the payment term is not reduced to writing, furthers the purposes of the statutory scheme. According to CHR, interpreting the writing requirement as a precondition to receiving trust benefits furthers the purposes of PACA by construing the trust to protect only those sellers who conduct their business in such a manner that complies with PACA and encourages prompt payment. Thus, CHR urges that "permitting sellers to orally extend payment

22

terms without adverse effect on trust eligibility would result in, and in fact already resulted in, practices by sellers which are in direct contravention of the PACA and its purpose." Br. at 23.

PACA makes a buyer's failure to tender prompt payment a violation, but it does not make a seller's failure to demand prompt payment a violation. After all, PACA does not preclude a seller from agreeing in writing to a payment term beyond 30 days, but only disqualifies such a seller from participating in the trust.12 See 7 C.F.R. SS 46.2 (aa)(11), 46.46(e)(2).

We recognize that, in instances such as the one presented here, our interpretation places those sellers who reduce to writing agreements to extend payment terms in no better position than those who do not. Nevertheless, because Congress established the PACA trust to protect unpaid sellers against buyers' failure to make prompt payment and their subordination of the sellers' claim to secured creditors, we believe that our interpretation furthers the statutory purpose. The primary purpose of the statute was to protect unpaid sellers vis-a-vis secured creditors, not to prefer certain unpaid sellers over others.

IV. CONCLUSION

For the foregoing reasons, we will affirm the district court's order denying CHR's motion to exclude Idahoan and Alsum from the universe of those qualified to receive trust benefits in this case.

_____

12. In urging this court not to follow Hull, CHR argues that the court failed to sanction sellers who do not conduct their business in accord with PACA's prompt payment requirements. In particular, CHR challenges the Hull court's conclusion that a buyer who orally agrees to extend a payment term thereby makes an arrangement to violate PACA without the corresponding recognition that the seller necessarily makes the same arrangement. According to CHR, the sanction for sellers who make an arrangement to violate PACA by orally agreeing to an extended payment term is the forfeit of its trust benefits. We reject this argument for the reasons discussed above.

23

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit