In re Kenneth S. DELYSER, Sr., Debtor.

Maine Farmers Exchange, Plaintiff,

v.

Kenneth S. Delyser, Sr., Defendant.

Bankruptcy No. 02–21130.
Adversary No. 02–2197.

United States Bankruptcy Court, W.D. New York.

July 11, 2003.

Louis A. Ryen, Lacy, Katzen, et al., Rochester, NY, for Debtor.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### *BACKGROUND*

On March 28, 2001, Kenneth S. Delyser, Sr. (the "Debtor") filed a petition initiating a Chapter 7 case.

On July 25, 2002, Maine Farmers Exchange ("Maine Farmers") filed an adversary proceeding objecting to the discharge of its claim. On August 2, 2002, the Debtor filed a Motion to Dismiss (the "Motion to Dismiss") the adversary proceeding commenced by Maine Farmers and on August 15, 2002, Maine Farmers filed a Motion for Summary Judgment in the adversary proceeding.

On November 26, 2002, the Court issued a Decision & Order (the "Partial Summary Judgment Decision")[1] which: (1) denied the Motion to Dismiss; (2) granted partial summary judgment to Maine Farmers to the extent that the Court found that the $12,575.82 principal balance owed was a nondischargeable obligation of the Debtor under Section 523(a)(4); and (3) set the matter down for a pre-trial conference and possible further proceedings in connection with the issues of whether Maine Farmers was entitled to attorney's fees and pre-judgment interest.

On December 5, 2002, the Debtor filed a Notice of Appeal of the Partial Summary

---

1. This Decision and Order will use the same defined terms as used in the Partial Summary Judgment Decision.

Judgment Decision. However, on December 23, 2002, Maine Farmers filed a motion for partial reconsideration of the Decision (the "Motion to Reconsider") that declined to award attorney's fees and prejudgment interest, and on January 16, 2003, the Debtor filed a Motion to Vacate the Decision (the "Motion to Vacate").

The Motion to Reconsider asserted that: (1) as set forth in a December 13, 2002 affidavit of Jack Holder, the Comptroller of Maine Farmers: (a) the Debtor never objected to invoices that provided for the payment of collection costs or attorney's fees and interest at 1 ½% per month on all accounts 30 days past the shipment date in purchase and sale transactions entered into between the Farm or related entities and Maine Farmers prior to the April 2000 shipments in question; and (b) the Debtor, on behalf of the Farm, had executed a Confirmation of Sale Memorandum (the "Sale Confirmation") that: (i) covered one of the three types of potatoes shipped in April 2000; and (ii) specifically provided for the payment of collection costs or attorney's fees, and interest at 1½% per month; and (2) for the other potatoes not covered by the Sale Confirmation, Section 2–207(2) of the New York Uniform Commercial Code (the "UCC") made the terms for costs or attorney's fees and interest part of the contract between the Farm and Maine Farmers, as merchants, because those terms did not materially alter the agreement between the parties and the Farm never objected to the terms within a reasonable time.

The Motion to Vacate asserted that: (1) Maine Farmers had not denied the truth of the Debtor's assertion that potato farmers in Central and Western New York were not expected to start making payments to their suppliers for seed potatoes until their potato crop was dug, sold and paid for; (2) notwithstanding any invoice terms, Maine Farmers had never collected interest on past due accounts as long as the accounts, in purchase and sale transactions with entities related to the Farm, were paid in this understood time-frame of when the potato crop was dug, sold and paid for; (3) under PACA Section 499e(c)(3), where the parties have agreed to a payment period different from that provided for by the Secretary of Agriculture, as was the case with the Sale Confirmation, those agreed payment terms must be disclosed on all written documents used in connection with the purchase and sale transaction, including any invoices, or the PACA Trust beneficiary loses the benefit of the Trust when it, as Maine Farmers did, fails to properly disclose those different payment terms on all documents; (4) the payment terms of the Sale Confirmation are ambiguous and internally contradictory, in stating that the terms are net 25 days after receipt and acceptance of the potatoes by the buyer on the one hand, but also that if payment is not made after demand the buyer will pay collection costs or attorney's fees, and that interest at 1½% per month is charged on all accounts 30 days past the shipment date; (5) the invoices sent by Maine Farmers for the two April 2000 shipments state that the payment terms are 10 days after receipt and acceptance by the buyer, raising further ambiguity as to the actual payment terms agreed to by the parties; (6) the interest rate charged by Maine Farmers in its March 31, 2001 statement to the Farm showed interest calculated at a rate of 14% per annum, whereas later issued statements calculated interest at 18% per annum; and (7) the Court should vacate its Partial Summary Judgment Decision because there are substantial questions of fact as to the past course of conduct between the parties.

The parties filed extensive submissions, both before and after oral argument, in an

effort to assist the Court in deciding the two critical issues raised by the production of the Sale Confirmation which was not before the Court when it filed the Partial Summary Judgment Decision. These two issues are: (1) whether, in view of the execution and delivery of the Sale Confirmation by the Debtor, the Court can now find that Maine Farmers is entitled to recover from the Farm and the Debtor the reasonable attorney's fees that it incurred in collecting the amounts due it for its sale of seed potatoes; and (2) whether the Court should find that Maine Farmers lost the PACA Trust benefits with regard to the shipment covered by the Sale Confirmation because under PACA Section 499e(c)(3) the agreed 25–day terms of payment in the Sale Confirmation were different from the 10–day terms disclosed in the invoice.

As confirmed by the parties' submissions, including the Debtor's February 27, 2003 Affidavit, although there were two separate shipments of three different types of seed potatoes in April 2000, they were the result of only one telephone order placed by the Debtor's son.

The two shipments were as follows:

1. An April 14, 2000 shipment ("Shipment One"), which on the April 24, 2000 Invoice # 106091 referred to contract number S2413, that included 425.60 CWT of ND2224–5R FNDN4 1½–3¼ Potatoes (the "ND2224 Potatoes") and 57.40 CWT of NY87(REBA) FNDN4 1½–3¼ Potatoes; and

2. An April 24, 2000 shipment ("Shipment Two") for 531.80 CWT LA-CHIP FND 1½–3⅛ Potatoes.

### *DISCUSSION*

I. *Status of Trust Benefits Under PACA Section 499e(c)(3)*

■ PACA Sections 499e(c)(3) and e(c)(4) provide as follows:

(3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

(4) In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: 'The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The

seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.'.

7 U.S.C.S. § 499e (LEXIS 2003).

There is no dispute that on the invoice for Shipment One, which included the ND2224 Potatoes, Maine Farmers failed to disclose the 25–day payment terms that were previously expressly agreed to in the Sale Confirmation. That same invoice also served to provide the Farm with notice of Maine Farmers' intent to preserve the PACA Trust, as permitted by PACA Section 499e(c)(4).

PACA Section 499e(c)(4), enacted in 1995, specifically provides that the invoice statement used to give notice of intent to preserve the benefits of the PACA Trust "must" include the information required by the last sentence of paragraph 499e(c)(3). Paragraph (3) requires that the invoice "shall" [2] disclose the terms of payment if they are different from the 10–day payment term prescribed by the Secretary of Agriculture.

The Ninth Circuit Court of Appeals in *In re San Joaquin Food Service, Inc.*, 958 F.2d 938 (9th Cir.1992) ("*San Joaquin*"), decided before the enactment of PACA Section 499e(c)(4), affirmed the Bankruptcy Appellate Panel for the Ninth Circuit when it held that: (1) PACA Section 499e(c)(3) specifically prescribes the means of preserving PACA Trust benefits; (2) where the parties have expressly agreed to payment terms different from that established by the Secretary, the statute mandates that the terms of payment shall be disclosed on the invoices, accountings and other documents relating to the transaction; and (3) the clear command of this language is that a failure to include payment terms in invoices divests the seller of trust benefits. *San Joaquin*, 958 F.2d at 940.

In 1995 Congress enacted PACA Section 499e(c)(4) which requires that a qualifying invoice must include the information required by the last sentence of paragraph (3), notwithstanding that the Court in *San Joaquin* had determined that providing this information and these disclosures was a clear command from Congress and that the failure to provide them divested a seller of its PACA Trust benefits.

The Third Circuit Court of Appeals in *Idahoan Fresh v. Advantage Produce*, 157 F.3d 197 (3d Cir.1998) ("*Idahoan*"), in deciding under PACA Sections 499e(c)(3) and (4) whether the parties must reduce to writing any oral agreement between them for payment terms different from the 10–day payment term prescribed by the Secretary of Agriculture in order not to lose the PACA Trust benefits, found that a seller will only lose its PACA Trust benefits under Sections 499e(c)(3) and (4) if: (1) it fails to give the required written notice of an intent to preserve the trust; or (2) it has agreed to payment terms beyond thirty days.

However, even though the Court in *Idahoan* indicated that it disagreed with the decision of the Ninth Circuit in *San Joaquin*, it stated that when a seller elects to use the invoice notice option provided for by PACA Section 499e(c)(4) to give the notice of its intent to preserve the trust, ". . . a written agreement to extend the payment period gives rise to the obligation to include the payment term on the invoice

**2.** As used in statutes, contracts, or the like, this word is generally imperative or mandatory . . . one which must be given a compulsory meaning; as denoting obligation. BLACK'S LAW DICTIONARY 1375 (6th ed.1990)

which serves as notice of the seller's intent to preserve its PACA rights." *Idahoan,* 157 F.3d at 206.

This Court is uncertain as to exactly why Congress included the requirement in PACA Section 499e(c)(4) that the invoice used to give the notice of intent to preserve the trust must also disclose any payment terms agreed to in writing that are different from the 10–day term prescribed by the Secretary of Agriculture. Nevertheless, the fact is that it did. Whatever those reasons may have been, this Court believes that it must have been other than to simply: (1) make it easy for any interested party to determine the thirty-day period within which the notice of intent to preserve the PACA Trust must be given; or (2) make it obvious that different payment terms agreed to were beyond thirty days. If Congress intended to accomplish those purposes when it required that any payment terms different from the 10–day term prescribed by the Secretary of Agriculture "shall" be included on any invoices, it could have simply said that in Sections 499e(c)(3) and (4).

In this Court's view, when Congress uses the words "shall" and "must" in statutory provisions that deal with preserving trust benefits and the circumstances under which a seller can lose them, those words must have consequences when they are not complied with, and the only reasonable consequence is the loss of trust benefits.

■ Therefore, this Court believes that when a seller elects to use the invoice notice option provided for by Section 499e(c)(4) in order to notify the buyer of its intent to preserve the PACA Trust, that seller must fully comply with the provisions of that paragraph in order to preserve the benefits of the Trust. Should a seller fail to include the payment terms previously agreed to by the parties in writing on the very invoice that it elects to use

to give notice of its intent to preserve the PACA Trust, it loses the benefits of the Trust.

For these reasons the Court finds that Maine Farmers lost any PACA Trust benefits for the unpaid indebtedness, including accrued interest, due for the ND2224 Potatoes when it failed to disclose the previously expressly agreed to 25–day payment terms on its invoice to the Farm. As a result, Section 523(a)(4) was no longer applicable, and that indebtedness was discharged in the Debtor's bankruptcy case.

As to the non-ND2224 potatoes, the Court reaffirms its findings as set forth in the Partial Summary Judgment Decision.

## II. *Maine Farmers' Right to Reasonable Attorney's Fees and Prejudgment Interest*

■ For the following reasons, the Court finds that Maine Farmers is entitled to recover from the Farm the reasonable attorney's fees that it incurred in connection with its efforts to collect the $12,575.82 due it from the Farm, as well as interest at 1½% per month from May 24, 2000, or at any applicable lesser rate for the periods covered by statements rendered to the Farm by Maine Farmers.

Although the Sale Confirmation, which provides for the payment of attorney's fees after demand and interest on accounts not paid within 30 days after the shipment date, covered only the ND2224 Potatoes that were included in Shipment One, it was executed and returned by the Debtor on behalf of the Farm after the Debtor's son placed a single telephone order for all of the potatoes covered by Shipments One and Two but before either shipment was made and accepted by the Farm.

Despite the absence of proof in the record that other sale confirmations were sent to the Farm in order to confirm the tele-

phone order for the two other types of potatoes ordered, it is possible that they were sent but then never executed or returned by the Farm. In any event, the Farm and the Debtor knew that at least the purchase of the ND2224 Potatoes by the Farm was being made pursuant to a signed agreement that would allow Maine Farmers to recover attorney's fees and interest in the event of non-payment. There was nothing significantly different about the ND2224 Potatoes, in either the volume ordered or their price. Therefore, there would have been no reasonable basis for the Farm or the Debtor to have believed that the terms which provided that attorney's fees and interest would be due in the event of non-payment were not also applicable to the purchase of the two other types of seed potatoes ordered by the same telephone call to Maine Farmers.

Furthermore, in light of the Sale Confirmation and the single telephone order, when the Farm received the invoices from Maine Farmers for Shipments One and Two, both of which included identical terms that provided for the recovery of attorney's fees and interest in the event of non-payment, the Farm was obligated to object to those terms within a reasonable time if it felt that those terms were not a part of the purchase and contract between the parties, as merchants, for the non-ND2224 potatoes. When Maine Farmers failed to raise an objection the terms that provided for the payment of attorney's fees and interest became a part of the purchase and sale contract for the non-ND2224 potatoes.

### III. *Section 523(a)(4)*

As a result of the findings and conclusions set forth in the Partial Summary Judgment Decision and in this Decision & Order: (1) the unpaid indebtedness due to Maine Farmers on the non-ND2224 pota-

toes in the amount of $6,447.18 is a nondischargeable obligation of the Debtor under Section 523(a)(4); (2) interest at 1½% per month on that nondischargeable $6,447.18 indebtedness from May 24, 2000, or at any lesser rate actually billed by Maine Farmers, is also a nondischargeable obligation of the Debtor under Section 523(a)(4); and (3) the $6,128.64 indebtedness due to Maine Farmers on the ND2224 Potatoes, plus any accrued interest, is not a nondischargeable obligation of the Debtor under Section 523(a)(4), and it was discharged by this Court's Discharge Order entered on July 24, 2002.

 Maine Farmers had incurred substantial attorney's fees in connection with its attempts to: (1) collect the amounts owed to it from the Farm; and (2) as part of its collection efforts, have this Court determine that all or a portion of the amounts owed was a nondischargeable obligation of the Debtor under Section 523(a)(4). Although the attorney's fees incurred to date are several times more than the principal amount of the indebtedness plus accrued interest, this Court cannot find that: (1) any of the attorney's fees incurred were unnecessary, since neither the Farm nor the Debtor has paid Maine Farmers any portion of the indebtedness, and the Debtor has raised numerous and substantial factual and legal arguments in connection with the pending Adversary Proceeding; (2) any of the attorney's fees incurred, at least through September 30, 2002 in connection with which detailed timesheets were supplied to the Court, were unreasonable with respect to time spent, duplicity or hourly rates; and (3) it is able to allocate the attorney's fees incurred on any reasonable basis between the collection of the amounts due for the non-ND2224 potatoes, which the Court has found to be a nondischargeable obligation of the Debtor, and the ND2224 Potatoes, in connection with which the Court has found that Maine Farmers lost its PACA

Trust benefits so that any amounts that might have been due it from the Debtor were discharged.

For these reasons, the Court finds that the attorney's fees incurred and to be incurred by Maine Farmers are obligations which are nondischargeable obligations of the Debtor.

### *CONCLUSION*

The Motion to Reconsider is granted in part and denied in part and the Motion to Vacate is granted in part and denied in part, as follows: (1) the unpaid indebtedness due to Maine Farmers on the non-ND2224 potatoes in the amount of $6,447.18 is a nondischargeable obligation of the Debtor under Section 523(a)(4); (2) interest at 1½% per month on that nondischargeable $6,447.18 indebtedness from May 24, 2000, or at any lesser rate actually billed by Maine Farmers, is also a nondischargeable obligation of the Debtor under Section 523(a)(4); (3) the $6,128.64 indebtedness due to Maine Farmers on the ND2224 Potatoes, plus any accrued interest, is not a nondischargeable obligation of the Debtor under Section 523(a)(4), and was discharged by this Court's Discharge Order entered on July 24, 2002; and (4) the attorney's fees incurred and to be incurred by Maine Farmers is a nondischargeable obligation of the Debtor under Section 523(a)(4).

By July 31, 2003, Maine Farmers shall file with the Court and with the attorney for the Debtor, a proposed Judgment and Order for the nondischargeable principal, accrued interest and attorney's fees due Maine Farmers through July 31, 2003, calculated in accordance with this Decision & Order.

**IT IS SO ORDERED.**